## JOHNSON v. BURNETT'S ADM'R.

1. McD made a verbal contract with G., for a tract of land, and went into possession, by which he agreed to discharge certain judgments against G., and pay the residue to McI. After this, the judgment creditor levied on the land, and before the sale J., a creditor of G., caused an attachment to be levied upon it. The land was sold, and purchased by McD., the judgment discharged, and for the residue of the purchase money, E. A. & Co. also judgment creditors of G., sued out garnishee process, and summoned McD., who answered, disclosing the above facts, whereupon an order was made, that McI. and J. appear and contest plaintiff's claim—Held, first, that an attachment could be levied on the land by J., after the levy of an execution upon it—second, that the attachment of J. gave him a right to the residue, in the hands of the garnishee, superior to McI., whose title was derived from the verbal promise of the garnishee, made prior to the purchase of the land—third, that J. was properly summoned under the act, requiring all persons who have notified the garnishee, that the debt in respect to which he has been garnisheed, has been transferred, or assigned

to them. to be summoned, to contest with the plaintiff, the validity of such transfer—fourth, that any person summoned under this statute, and aggrieved by the judgment of the court, may prosecute a writ of error—and, fifth, that the judgment of E. A. & Co., being posterior to the levy of the attachment of J., would be postponed to it.

Error to the Circuit Court of Wilcox.

E. L. ANDREWS & Co. having obtained a judgment against William F. Gee for $1,808 17, besides costs, made the necessary affidavit, and obtained process of garnishment against F. K. Beck, administrator of S. Burnett, and John R. McDowell, as debtors of Gee.

McDowell appeared, and answered in writing, in substance, that in February, 1845, he made an agreement to purchase certain lands of Gee, for which he was to pay $2,250. That in discharge of this debt, he was to liquidate two judgments against Gee. One in favor of the B. Bank at Mobile, for $235, or $240, and one in favor of the Branch at Montgomery, for $700 or $800. That he held Gee's note for about $300, and the residue of the purchase money was to be paid to one James H. McIlvaine. That after this agreement, the land was levied on by an attachment, at the suit of one Ephraim O. Johnson, against Gee, and that he then declined to have any thing more to do with the land.

The land was also levied on by S. Burnett, the marshal, by virtue of an execution in favor of the B. Bank at Mobile, against Gee, and sold, except forty acres, in April, 1845, and purchased by garnishee, for $1,701, for which he executed his note to Burnett, which is now in the hands of Beck, his administrator. That the note is entitled to a credit of $431, which he paid to Burnett. Has been informed, that Gee has given an order on Burnett, in favor of McIlvaine, for the residue. This writ of garnishment was executed on the 20th February, 1846.

Upon the coming in of this answer, an order was made that Johnson and McIlvaine appear and contest plaintiff's claim.

The issues were made up by Andrews & Co. setting out the writ of attachment, the answer of the garnishee, McDowell, and conclude by an averment, that the money in his hands, is subject to the satisfaction of their judgment.

Johnson filed a replication, setting out that he caused an attachment to be levied against Gee, which was executed on the 5th March, 1845, on certain lands of Gee, which are described, and which are the same lands afterwards sold by the marshal, as set forth in McDowell's answer, for the sum of $1,701, and avers that after the discharge of the judgment in favor of the Bank, there remained in the hands of the marshal $1,360 10, and that the marshal had notice of the levy of the attachment on the same lands. He further avers, that at the September term, 1846, of the circuit court of Wilcox, he recovered a judgment against Gee, in his attachment suit, for $1,524 49, besides costs, and insists that as the levy of his attachment was prior to the service of the garnishee process, he is entitled to the money in the hands of the garnishee.

To this replication, Andrews & Co., and McIlvaine demurred.

McIlvaine also filed a replication, alledging in substance, that previous to the levy of the bank executions, an agreement had been entered into between Gee, and McDowell, for the sale of the land, by which the latter agreed to take up a note of the former, to which McIlvaine was a surety, and which was to be taken as part of the purchase money. That thereupon he, McIlvaine, agreed to give McDowell time for the payment of the money, and the latter took the possession of the land, and exercised acts of ownership over it, under the agreement, and before the levy of the attachment.

That shortly after, McDowell hearing of the *lien* of the judgment, of the bank, preferred that the title to the land should come through the marshal, that he should sell the land, and it was thereupon agreed, between Gee, McDowell, and McIlvaine, that if McDowell became the purchaser, the residue of the purchase money, after satisfying the bank, should be applied to the payment of the note. The replication then avers the sale by the marshal, the purchase by Mc-

94

Dowell, and the balance still due in his hands, as set out previously, and concludes by averring, that his *lien* attached, immediately upon the sale by the marshal, which was previous to the time that the garnishment was issued, or served, and that therefore his *lien* is paramount to that of Andrews & Co.

McDowell filed an amended answer, in which he states that he refused to take Gee's title to the land, but agreed with Gee, that if he should become the purchaser of the land for a less sum than $2,250, he would pay McIlvaine, for Gee, the amount which he had agreed to pay him. In answer to a question put to him, he said he went on the land to a gin house, raked up the cotton seed, and fenced it in for his own use, before the levy of the execution, or the attachment. That this was done by him under the agreement. There was no writing setting forth the terms of the agreement, and that he declined to take the title of Gee, because he preferred to take the sheriff's deed.

Johnson took issue on the plea of McIlvaine, and relied on the statute of frauds, with leave to give any evidence establishing fraud in fact.

The court sustained the demurrer of the plaintiff to the replication of Johnson, and submitted to the jury to determine, whether Andrews & Co., or McIlvaine, had the superior *lien* to the funds in the hands of the garnishee, and the court rendered judgment accordingly.

Johnson now assigns for error, the judgment of the court on the demurrer to his replication.

SELLERS, for plaintiff in error.

Although the bank marshal had levied the executions in favor of the bank, one day previous to the levy of his attachment on the same lands, the title of the defendant, Gee, was not thereby divested. That the right which the bank marshall acquired by his levy, gave to him a special property only in the land, and this for the sole purpose of enabling him to sell so much as was necessary to satisfy the executions in his hands. But notwithstanding the levy by the marshal, the general property, as well as the title to the land levied upon, remained in the defendant, Gee—clogged it is true, with

the lien created by the levy, and so it would be if, instead of the levy, (being real estate,) a judgment only, had been rendered. [Atwood v. Pierson, 9 Ala. Rep. 658; Jackson v. Gewin, Ib. 116.]

The legal title to the lands remained in Gee, notwithstanding the levy by the marshal, and he could have sold and transferred his title to a third person, clogged however with the levy. And if this be so, then certainly the sheriff could levy the plaintiff's attachment on the same land. And if he could levy an attachment under the circumstances, then it would seem clear that the plaintiff, by virtue of the lien created by the levy of his attachment on the same lands would be entitled to the excess of the monies in the hands of the marshal, after the satisfaction of the executions levied by him. If the marshal had sold only enough of the land to pay the executions levied by him, I apprehend, that either plaintiff's right to sell the residue to satisfy the judgment in his attachment suit, would not admit of question; and if this be so, is he not equally entitled to the excess of the monies arising from the sale of said land in the hands of the marshal, after paying the executions levied by him.

There is a material distinction between the levy of an execution upon real estate and personal property. In the case of real estate, the property taken being incorporeal and intangible, it could not be known, whether it was attached or not, and it would be unjust that a creditor who had taken the measures prescribed by the statute, in making his attachment, should be defeated of his security, because in the event it should turn out that another officer had taken the same measures of which no public notice had been given, or was required to be given. [Denny v. Hamilton, 16 Mass. 405.]

In the case of *personal property* attached or levied on, another creditor who would make a second levy or attachment, must do it by the same officer who made the first, because he has the possession of the property, and the creditor therefore knows to whom to deliver his writ. [Denny v. Hamilton, *supra.*]

In this case it is insisted, that the marshal being notified of the levy of the plaintiff's attachment before the sale of said land by him, and being also notified of the levy thereof at the

time of the sale, is bound in law to hold the excess of the monies arising from said sale, after paying the executions then in his hands, entitled to priority over the levy of plaintiff's attachment, or so much as would satisfy the plaintiff's judgment obtained in his said attachment suit as a trustee, and that the plaintiff might well maintain an action at law against him, to recover said monies.

S. G. Cochran and W. Cochran, for McIlvaine.

1. Will a writ of error lie upon a proceeding of this kind, where there are three sets of independent actors, and the jurisdiction, if any, is the incident of a judgment, and authorized by statute merely, in a course unknown to the common law.

2. The proceeding as to Johnson is irregular and unauthorized by the statute. He is an attaching creditor; he is not in any sense an assignee in the meaning of the statute, whether as an assignee in fact, or by intendment of law. [Clay's Dig. 63, § 39.]

3. The land having been levied upon by the marshal under executions in favor of the Branch Bank at Mobile was not subject to a subsequent levy under an attachment in favor of Johnson, issued out of the circuit court of Wilcox. [Hagan v. Lucas, 10 Pet. 400.]

ORMOND, J.—The demurrers of Andrews & Co., and McIlvaine, to the replication of Johnson, makes it necessary to examine the relative merit of the several claimants to the fund in the hands of the garnishee.

If the attachment could be levied upon the land, after the levy of the execution in favor of the bank, a matter which will be hereafter considered, it is obvious the right of Johnson, the attaching creditor, is superior to that of Andrews & Co., assuming as appears to be the fact, that their judgment against Gee, was not obtained till after the levy of the attachment. Having no *lien* on the land, in virtue of their judgment, they must rely on the service of the garnishee process, which was not until nearly a year after the levy of Johnson's attachment: it follows, that the *lien* acquired by the attach-

ment being prior in time, is superior to the *lien* acquired by the garnishment.

To determine the priority of right, between the attachment of Johnson and the *lien* asserted by McIlvaine to the fund in the hands of the garnishee, we must look to the answer of the latter, which not being controverted, must be considered as true. The substance of the answer, is, that he agreed verbally with Gee for the purchase of the land, for a price stipulated, and after discharging certain debts, to pay the residue over to McIlvaine, who was bound as surety for the payment of a debt for Gee. He declined however, to take the title from Gee, but was to receive a title from the marshal, who, subsequent to the agreement, had levied on the land at the suit of the bank.

The attachment having been levied on the land, previous to the sale by the marshal, the right of the attaching creditor must be superior to that of McIlvaine, unless he can call to his aid the parol agreement of McDowell the garnishee, by which he promised to pay him the surplus of the purchase money, after satisfying the bank debt, in the event he became the purchaser of the land at the sale by the marshal. It appears to us very clear, that a conditional promise of this kind will not create a *lien*, which would override an actual *lien*, created by the levy of the attachment, before the contingency happened upon which the promise was to attach. If it was in the power of the parties to make a contract like this, which would prevent the creditors of Gee from acquiring rights in the mean time upon the property, or its proceeds, it is very clear from the answer of the garnishee, that no such contract was intended to be made by him. This is shown, first, by the fact that there was no written contract, and consequently, as it related to land, there was no valid obligation on either party. Second, that his promise was contingent, depending on his purchasing the land. His obligation therefore to perform this contract, did not arise until the contingency happened, and if in the mean time, by the act of a creditor of Gee, and by operation of law, another person became entitled to the funds in his hands, he is discharged from performing it, because, by operation of law it has become impossible to perform it.

Our conclusion therefore is, that as the attachment of Johnson gave him a *lien* on the land, subject to the prior claim of the bank, he is entitled to the surplus of the purchase money, after discharging the bank debt, in preference to any *lien* which McIlvaine had, in virtue of the contract between Gee and the garnishee, which, however valid and binding it might have been as between themselves, can have no efficacy against a right acquired by a creditor, previous to the time when the contract became obligatory on the garnishee. This brings us to the consideration of the question, whether the land could be levied on by attachment, having been previously levied on by the bank execution, by a different officer.

By the act of 1837, an attachment may be levied on land. [Clay's Dig, 60, § 29.] The attachment law does not specify the mode in which this shall be done, and it is sufficiently manifested by the return of the sheriff, stating the fact, and describing the land levied on. We are not able to perceive how the fact, that the land had been previously levied on by execution, by a different officer, could prevent a creditor from levying his attachment subsequently, previous to its sale. The former levy did not divest the title of the defendant in execution. It still remained in him. He could, notwithstanding, have made a valid sale, and transfer of the land, subject to the *lien* of the judgment creditors, and if so, what reason can there be why a creditor may not levy process on that, which the debtor could sell. That the execution debtor may transfer his title to personal property under such circumstances, was held by this court in Atwood v. Pierson, 9 Ala. Rep. 658, and again in Jackson v. Gewin, Ib. 116, and if so, there can be no doubt he can make the same disposition of real estate, under the same circumstances.

Nothing is more common, than that successive attachments, or executions, should be placed in the same officer's hands, against the same person, in which case, if the property was not sufficient to satisfy all, they would be satisfied according to their respective priorities. That rule, it is contended, does not apply here, because the levy of the bank execution was made by the bank marshal, whilst the attachment was levied by the sheriff of Wilcox. To sustain this

proposition, he relies upon the case of Hagan v. Lucas, 10 Pet. 400. The point there determined, is, that slaves taken in execution by the sheriff of a State court, cannot be again levied on by the marshal of the United States court, though a bond had been given to try the right of property in the State court, and the slaves delivered to the claimant. The principal argument, on which the decision is based, is, the conflict of jurisdiction, which would ensue if the property, whilst in the custody of the law under process from one jurisdiction, could be seized by process emanating from another. However true this proposition may be, in regard to personal property, which may be actually seized, and which cannot therefore be in the possession of two different persons, it does not apply to land, of which no actual seizure can be made, and of which the levy of an attachment can only create a *lien*, with a right to sell for the satisfaction of the judgment, if obtained. The levy of the bank execution on the land, was merely the initiatory step to a sale of the land, for the satisfaction of the judgment. If no such levy had been made, the levy of the attachment would have been subordinate to the prior judgment *lien*. The levy of the bank execution on the land, was merely for the enforcement of the *lien* of the judgment, and if the property had been divisible, no more should have been sold, than was necessary to satisfy the judgment. If that were impossible, or if, from any other cause, the entire tract was sold, the attaching creditor having a general *lien* on the land, must be entitled to the surplus, after discharging the judgment of the bank. If this is not so, the surplus would belong to the defendant in the judgment, as there can be no doubt, the sale by the marshal, would convey to the purchaser the title to the land, which in virtue of the paramount *lien* of the bank judgment, would be good against the subsequent *lien* of the attachment.

It is urged that the summons to Johnson, to contest his right to the funds in the hands of the garnishee, is not authorized by the statute. The act provides, that when the garnishee shall answer, "that previous to the time of such answer, he has received notice of the assignment, or transfer of the debt, or property, in respect to which the garnishment issued," the court shall not determine on the validity of the

assignment, or transfer, but shall cause a notice to be issued to the party to whom the transfer is alledged to have been made, to contest with the plaintiff, the validity of the transfer, or assignment. [Clay's Dig. 63, § 39, 40.] In our judgment, the levy of an attachment, is within the evident intent and meaning, if not within the letter, of the statute. It is a transfer by operation of law, which is as fully within the intent of the statute, as a transfer in fact by the debtor. If this is not the proper construction of the law, a large class of cases, fully within the mischief designed to be prevented, are not provided for, and there would be no adequate protection for the garnishee, but in filing a bill of interpleader.

There can be no doubt, that in any case embraced by this statute, a writ of error will lie at the suit of any party aggrieved by the judgment of the court.

Johnson is the only party who has assigned error in this court, but as the cause must be remanded, it may be proper to remark, that the court committed an error, in referring to the jury the question whether the plaintiff, or McIlvaine had the superior *lien*. It was the province of the jury to determine facts, and these ascertained, it was a pure question of law, which had the superior *lien*. Upon the facts stated in the answer of the garnishee, and of those admitted by the pleadings, it is our opinion, Johnson in virtue of the attachment, has a *lien* upon the funds remaining in the hands of the marshal, he having been notified of the attachment, superior to the *lien* either of the plaintiff, or McIlvaine. How the surplus, if any, should be disposed of, is a question not raised by any assignment of error. Judgment reversed and cause remanded.