T. H. & J. M. ALLEN & CO. *v.* T. B. LENOIR ET UX., AND
   T. B. LENOIR ET UX. *v.* T. H. & J. M. ALLEN & CO.

1. CHANCERY. *Practice. Husband and wife. Severance in defence.*
   In a suit against husband and wife to subject the wife's land to a mort-
   gage, the husband pleaded bankruptcy. The wife petitioned to be
   allowed to defend separately, and obtained an order to do so. The
   complainants then dismissed as to the husband; and afterwards the
   wife moved for a discontinuance as to herself, which motion was
   denied by the court. *Held,* not error to deny such motion.

2. EVIDENCE. *Impeaching official certificate.*
   Evidence of a statement impeaching a certificate of acknowledgment
   made by the clerk to the witness· is incompetent, because hearsay,
   and because of impeaching the official certificate of the clerk making
   the statement.

3. EQUITY. *Mortgage. Married woman. Claim for support out of mort-
   gaged property.*
   In a suit to enforce a mortgage against the lands of a married woman,
   the claim of the wife that provision should be made for the support
   of herself and children out of the property mortgaged by her is
   without foundation in law or equity.

4. ACKNOWLEDGMENT. *Married woman. Substantial compliance with
   statute.*
   The omission of the words " freely " and " voluntarily " from the cer-
   tificate of acknowledgment of a married woman does not avoid the
   certificate when it shows that the wife acknowledged she executed
   the deed " without any fear, threats or compulsion " on the part of
   her husband, and upon an examination separate and apart from him.

5. MARRIED WOMAN. *Mortgage. Acknowledgment essential.*
   A proper acknowledgment is an essential part of the execution of a con-
   veyance of her land by a married woman.

6. PRACTICE. *Appeal. Joinder of husband with wife. Effect.*
   When a husband joins his wife in an appeal to this court, he makes
   himself a party to the suit for any further proceedings in it, whether
   he was a party in the court below or not.

APPEAL and CROSS-APPEAL from the Chancery Court of
Bolivar County.

Hon. E. STAFFORD, Chancellor.

T. H. & J. M. Allen & Co., the complainants in the court

below, filed their bill in the Chancery Court of Bolivar
County, on the 16th of December, against Thomas B. Lenoir
and Emma S. Lenoir, his wife. The bill alleged that on the 27th
of January, 1866, Thomas B. Lenoir gave his promissory note
to the complainants, for $9,275, due ten months after date ;
and on the 25th of January, 1866, gave another promissory
note to the complainants, for $3,000, due nine months after
date ; that the said notes were given for supplies for the planta-
tion and family of said Emma S. Lenoir, and necessaries and
wearing-apparel for herself and her children, household furni-
ture, buildings on her plantation and materials therefor, and
work and labor done for the benefit and improvement thereof ;
that, to secure the payment of the notes, Thomas B. Lenoir
and his wife, Emma S. Lenoir, on the said 25th of January,
1866, executed a mortgage to the complainants, on said plan-
tation of Emma S. Lenoir, the same being her separate property.
. The complainants prayed that an account be taken to ascertain
the amount due them, and that a decree be entered requiring
the defendants to pay the same on a day named, and in default
thereof that they be barred of their equity of redemption in said
land, and that so much thereof as might be necessary to pay the
amount of the debt be sold.    The bill was not sworn to.

The acknowledgment to the mortgage sued on purported to
have been taken by John B. Hunt, clerk of the Probate Court
of said county, whose certificate recited that on the 25th of
January, 1866, " the said Emma S. Lenoir, after being ex-
amined by me, separate and apart from her said husband,
acknowledged that she signed, sealed and delivered the said
deed, as her own act and deed, without any fear, threats or
compulsion on his part whatever."

On the 26th of April, 1869, Thomas B. Lenoir filed a plea of
bankruptcy, and stating also that he had no interest in the
property in the bill mentioned.   On the same day Emma S.
Lenoir filed a petition stating that her husband was a bank-
rupt, and refused to join her in any defence, that the property
in controversy was her separate estate, and asking to be al-
lowed to defend separately by answer and cross-bill, which
was granted by the court.

Emma S. Lenoir, on the 26th of April, 1869, filed her answer

and cross-bill, in which she denied the allegations of the complainants' bill, except that she admits the land in controversy to be hers, and that the notes mentioned were executed by her husband.   But she denied that said notes were given for supplies for her plantation or improvements thereon, or necessaries for herself and family, or were her debts; but stated, on the contrary, that they were given by her husband for money, supplies, &c., advanced to him for his own separate account and business, and not as her agent or with her consent.   She stated that the mortgage was signed by her but never acknowledged; because, when she went to the town of Beulah for the purpose of acknowledging said mortgage, she was informed that the clerk of the Probate Court, John B. Hunt, was intoxicated, and declined to see her, and she left the mortgage in the store of Martin & Chrismas, adjoining the office of said clerk, intending to return and acknowledge it; but she never did see said clerk, John B. Hunt, in relation thereto, and never did acknowledge the said mortgage before said Hunt or any other officer.   This answer and cross-bill was sworn to by Emma S. Lenoir.

The complainants responded to the defendant's cross-bill, denying all its allegations, and stating that in the year 1860 Thomas B. Lenoir sold his own plantation and moved upon the land of his wife embraced in said mortgage, and after such removal applied to the respondents, and they agreed to advance him necessary plantation supplies; that said Lenoir, to close the account thus made with the respondents, executed the note for $9,275, described in the mortgage; that the note for $3,000 was given to cover advances to be made by the respondents on the faith of said note and the mortgage by Lenoir and wife upon the wife's land; that all the items so advanced were for plantation supplies, money to pay freights, &c., and were advanced to said Lenoir to enable him to cultivate the said plantation of his wife for the year 1866, and for the maintenance of herself and family; and that Lenoir was then hopelessly insolvent, and engaged in cultivating his wife's plantation.   This answer was sworn to by Thomas H. Allen, one of the respondents.

On the third day of August, 1870, an order was made by

the court, denying the motion of Emma S. Lenoir to dismiss the suit as to her, and setting aside the order of discontinuance as to Thomas B. Lenoir, previously entered.

On the twenty-seventh day of January, 1871, the defendant, Emma S. Lenoir, filed her amended answer and cross-bill, in which she alleged the bankruptcy and discharge of her husband; and that the property in controversy was the only property she owned, and she claimed provision for herself and her minor children out of it, in case any decree should be rendered against her. The complainants demurred to the defendant's amended answer and cross-bill, for want of equity, and because it did not aver that she was unable to present the same defence in her original answer and cross-bill; and the court sustained the demurrer.

Thomas B. Lenoir in his deposition stated that two or three days after the 27th of January, 1866, he gave the said mortgage to his wife, that she might carry it to the clerk's office and acknowledge it; that afterwards he went to the probate clerk's office, kept at the store of Martin & Chrismas in Beulah, to get the mortgage; that it was then in the hands of the clerk, and there was no certificate of acknowledgment to it. The clerk, John B. Hunt, stated to the deponent " that he had been told that Mrs. Lenoir had been there, but he was not fit to be seen by a lady, and did not see her, and had not seen her since, but that as she had previously acknowledged a similar mortgage before him and he knew her handwriting, he would not give them any further trouble, but would certify to it." The deponent also stated that the larger of the two mortgage notes was given for a debt contracted by the deponent before the war; that he removed to the plantation in controversy in February, 1860; that previous to that time he lived on his own plantation; that the greater portion of the debt for which said note was given was contracted previous to his removal to his wife's plantation; that the note for $3,000 was given for supplies to be advanced by the complainants to the deponent, and was to be secured by a mortgage of the deponent and wife upon the lands in controversy; that the certificate of acknowledgment by Mrs. Lenoir to the mortgage was made by the clerk, John B. Hunt, at the deponent's request. The complainants moved the court to

suppress that portion of Thomas B. Lenoir's deposition detailing statements of John B. Hunt, because it was hearsay, illegal and incompetent; which motion was overruled.

Thomas H. Allen, one of the complainants, in his deposition stated that Thomas B. Lenoir began business with the complainants a short time prior to the war, and in the year 1865 owed them about $9,000. In December, 1865, Lenoir applied to the complainants for an advance of $3,000, stating that it would be impossible for him to go on with his planting operations without such assistance; the complainants at first declined to make any advances to him, but finally accepted the mortgage signed by Lenoir and wife, acknowledged and duly certified by the clerk of the Probate Court, and made the advances according to contract; the deponent again agreed to advance for Lenoir in 1867, but having exhausted his credit by April of said year, the complainants refused to make him any further advances, when Mrs. Lenoir came to the deponent's office and stated that unless they could procure assistance they would lose their crop, and that but for the mortgage the complainants had upon her property they could obtain assistance elsewhere; she also stated to the deponent that some of her friends had said it was a deed of trust, but she knew it was a mortgage; the deponent had the orders of Mrs. Lenoir filled to the extent of her demand during her visit; the deponent's firm refused to pay some of Thomas B. Lenoir's drafts, as the allowance to him was to be used in cultivating and gathering the crop.

E. J. Comstock deposed on behalf of the complainants that he had known John B. Hunt about five years, and had been his deputy clerk for eleven months; that his signature to the certificates to said mortgage was genuine; that his habits were good; that he often charged the deponent with the importance attached to an official signature; that Hunt did sometimes become intoxicated to such an extent as to incapacitate him for business; but that the deponent certainly never had any evidence of his carelessness in transacting business.

Charles Clark, in his deposition taken by consent, stated that the account made by Mrs. Lenoir with the complainants in the year 1867 was paid by the deponent in 1868, prior to the filing of the complainants' bill; that the items in said account

are not included in the charges in said bill, and that he has lost the copy of the account and receipt of payment.

Only such depositions and parts of depositions and other evidence are set out as bear upon the points decided by the court.

On the 24th of January, 1874, an order was entered appointing a commissioner to take an account and state the amount due on the note for $3,000. On the same day a final decree was rendered, ordering the defendants to pay the complainants $4,305, the sum found due on said note, and for foreclosure and sale of the mortgaged property in default of such payment. From this decree both parties appealed to this court. Thomas B. Lenoir joined in the appeal with his wife.

Thomas B. Lenoir and wife, as the appellants, assigned for error that the court below rendered a final decree foreclosing the mortgage, and ordering a sale of the lands of the appellant, Emma S. Lenoir, and made such decree without any allowance to her or provision for the support of her and her children. There were other errors assigned but not noticed by the court.

T. H. & J. M. Allen & Co., as the appellants, assigned for error that the court below overruled the motion to suppress the deposition of Thomas B. Lenoir; and that the court erred in not decreeing that the lands mortgaged were liable for payment of the note for $9,275, or that the rents and profits of said lands should be applied to the extinguishment of said note, and after payment thereof that they should be sold for payment of the note for $3,000.

*Clark & Montgomery* and *Whartons*, for Thomas B. Lenoir and wife, appellants.

1. The certificate of acknowledgment was insufficient. It does not certify a private examination. The high court, in *Warren* v. *Brown*, 25 Miss. 73, unanimously decided that such a certificate was insufficient. This case was overruled in *Love* v. *Taylor*, 26 Miss. 574; but these cases arose under Hutchinson's Code. The present mortgage was since the Rev. Code of 1857. Each Code requires the acknowledgment of a married woman to be " on a private examination apart from her husband, . . . as her voluntary act and deed, freely and without any fear, threats or compulsion." But in the article

on the subject in the Code of 1857 these important words are added: "which certificate shall conform to the requirements of this article." These words were not found in the law under which the above decisions were made. The legislature of 1857 deemed a "private examination" essential; hence the Revised Code requires not only that the officer shall certify the acknowledgment, but makes the important addition, that his certificate shall conform to the "requirements of that law." The certificate does not conform to the requirements of the law in further important particulars. It certifies that it was "her own act and deed," but not that it was her "voluntary" act, or that she signed it "freely." These two words, "voluntary" and "freely," are referred to by the court in the case cited as requisites of the certificate.

2. The mortgage never was acknowledged by Mrs. Lenoir. Without an acknowledgment, a deed is void as to a *feme covert*. Mrs. Lenoir swears in her answer that she never acknowledged the mortgage before any officer. The acknowledgment not being alleged, and the clerk's certificate not made an exhibit and part of the bill, and the bill not sworn to, the answer is conclusive. But if not conclusive, the acts of the officer are ministerial, not judicial, and may be disproved. The proof in the case shows that the certificate is false.

3. The court below erred in sustaining the demurrer to Mrs. Lenoir's amended answer and cross-bill. In her amended answer and cross-bill, after affirming her former answer, she alleges the discharge in bankruptcy of her husband, and that she had no knowledge of his discharge till the last term of this court; and that she has four minor children dependent upon her for support, and that this dependency has arisen since the last term of the court. An amended answer may be filed when the party relies upon matters which have come to his knowledge since the answer was filed. Story Eq. Plead. § 896. A married woman is entitled to a settlement against her husband, or his assignees, or his creditors. 2 Story Eq. Jur. § 1411.

4. Were T. H. & J. M. Allen & Co. entitled to a decree of foreclosure and sale of the mortgaged premises? If the debt was the debt of the husband, the decree could not have touched the *corpus* of the property, but only the income. The bill

alleges that the notes were given by the husband for supplies for the family and plantation of the wife, wearing-apparel, &c.; but this she positively denies in her answer. The answer is sworn to: the bill is not. The question is, To whom was the credit given? *Guion* v. *Doherty*, 43 Miss. 551. As the notes were the notes of the husband, and the accounts charged to him, the burden of proof as to its being the debt of the wife was on the complainants in the court below. There is no evidence to connect Mrs. Lenoir with the debts of her husband farther than the mortgage. The decree founded on the mortgage is erroneous, because it should have been only against the *income* for the amount due on the $3,000 note.

*W. L. Nugent*, for T. H. & J. M. Allen & Co., the cross-appellants.

1. The demurrer to the supplemental cross-bill of the defendants in the court below was properly sustained. The matters alleged in said cross-bill were pure matters of defence in any event, and presented as pleaded no bar to a recovery.

2. The mortgage being operative and valid, what was the extent of the relief to which the complainants were entitled? There can be no doubt as to the note for $3,000, given in 1866, to obtain advances for the cultivation of Mrs. Lenoir's plantation. The loan was made upon the faith of the mortgage itself, as representing the separate estate of the wife, and for the cultivation of that estate, or its use, benefit and improvement. The bill so specially charges; and the answer to Mrs. Lenoir's cross-bill discloses the fact that the note was given to cover advances of plantation and family supplies, money to pay freight and hire of laborers; that the advances were made for the cultivation of Mrs. Lenoir's plantation, to promote her interest, for the maintenance of her family, &c., and upon the faith of the mortgage. The accounts filed fully corroborate the allegations thus made, and the decree as to this note is well warranted.

3. As to the note for $9,275, I take it for granted that in any event the complainants were entitled to a receiver to secure the rents and profits of the lands for application until this note was discharged. That point has already been adjudicated in several cases, the most recent of which is that of

*Vizer* v. *Scruggs*, 49 Miss. 705. Is the property itself bound for payment of this note absolutely? The statute makes all contracts made by the husband " for supplies for the plantation of the wife " a charge upon the wife's separate estate. The pleadings so present the case that a decree should have gone, upon them alone, for the complainants. In any event, the court should have decreed the appointment of a receiver, as contemplated by the statute and the decisions of this court, so that the rents and profits should be applied to the payment of the note for $9,275; and, after payment of that, should have decreed a sale of the property, on failure to pay the note for $3,000. This was the only course open if the mortgage could be held valid. If it was recognized by the court at all, it should have been upheld for all it was worth.

4. The defendant, Emma S. Lenoir, defending separately, insisted upon the invalidity of the mortgage. The only witness introduced to impeach the mortgage is Thomas B. Lenoir, her husband; and all that part of his testimony which relates to statements of Hunt was objected to, and a motion made to suppress the deposition was overruled. It is evident that the objection was well taken. Hunt himself could not have been allowed to impeach his own certificate. *Planters' Bank* v. *Walker*, 6 S. & M. 409; *Stone* v. *Montgomery*, 35 Miss. 83. And certainly his statements at second hand could not be entertained by the court; for, besides the objection stated, it was mere hearsay evidence. *Melins* v. *Houston*, 41 Miss. 59; 1 Greenl. Evid. §§ 98, 99, 124. Aside from the facts in relation to the mortgage, the complainants were entitled to a recovery, because of the fact that their case is brought clearly within our statutes; and, without any mortgage at all, the court did right in decreeing in their favor for the $3,000 and interest.

CAMPBELL, J., delivered the opinion of the court.

The suit being against husband and wife to subject the wife's land to the mortgage and both husband and wife being summoned, the husband pleaded that he had been discharged in bankruptcy, and the wife petitioned to be allowed to defend the suit separately from her husband, and, having obtained an order to do so, defended separately. The complainants

then dismissed their bill as to the husband, and afterwards the wife moved the court to discontinue the suit as to her, because it had been discontinued as to her husband. This motion was denied; and we think there was no error in this. There was no error in sustaining the demurrer to the amended and supplemental answer and cross-bill of Mrs. Lenoir. The Chancellor did err in not suppressing the evidence of what Hunt, the clerk, whose certificate of acknowledgment appears on the mortgage, told the witness about that certificate. It was incompetent, both because it was hearsay, and because it impeached the official certificate of Hunt.

The remaining questions involve the validity of the mortgage sought by the bill to be foreclosed. The decree assumes its validity, and directs its enforcement as to the $3,000 note described in it, but not as to the larger note, by a sale of the mortgaged land. Both parties are dissatisfied with this decree. Allen & Co. complain that the larger note is excluded; and Mrs. Lenoir insists that the mortgage shall not be enforced at all, because, she says, she did not acknowledge it, as certified by Hunt, and if it is valid it binds only her income, and not the *corpus* of her said estate. In addition to this, she insists that the certificate of acknowledgment as made is not good under the statute; and that, at all events, provision should be made for the support of herself and children out of the mortgaged property. This last claim is totally without any foundation in law or equity. We think the certificate of acknowledgment sufficient. It shows a substantial compliance with the statute. We adhere to *Love* v. *Taylor*, 26 Miss. 567; and do not think the omission of the words " freely " and " voluntarily " from the certificate avoids it, as it shows that the wife acknowledged that she executed the deed " without any fear, threats or compulsion " on the part of her husband, and this upon an examination separate and apart from him. *Bernard* v. *Elder*, 50 Miss. 336.

The claim of Allen & Co., that if the mortgage is good at all it secures the larger note, and should be enforced as to that, is well taken; and the objection of Mrs. Lenoir, that, even if the mortgage is valid, only her income can be subjected under it, is a just one, upon the facts disclosed by the record. We can-

not escape the conclusion, after an earnest effort to avoid it, that the mortgage was never acknowledged by Mrs. Lenoir, and that the certificate that she had acknowledged it is untrue. A proper acknowledgment is an essential part of the execution of a conveyance of her land by a married woman.  The bill charges the execution of the mortgage by Mr. and Mrs. Lenoir. In her answer, she denies that she ever acknowledged it. There is nothing but the official certificate of her acknowledgment to contradict her answer, which is supported by a number of circumstances which fully sustain it.  The decree, being based on the mortgage, is erroneous.  The rights of the parties must be determined by the facts independent of the mortgage, which, for the reason stated, is not obligatory on Mrs. Lenoir. The decree will be reversed ; and, in order that the complainants (Allen & Co.) may obtain leave to amend their bill, if they can do so, and litigate with Mrs. Lenoir as to her liability by virtue of the dealings between the parties, the cause will be remanded to the Chancery Court.  The costs of the appeal and cross-appeal in this court will be taxed on Allen & Co. Whatever may have been the effect as to Thomas B. Lenoir of the dismissal of the suit as to him and the order at a subsequent term vacating this order of dismissal, his joinder in the prosecution of the appeal to this court makes him a party to the suit for any further proceeding in it.