| 29 | 1 |
| 30 | 517 |
| 29 | 1 |
| 35 | 31 |
| 36 | 801 |
| 29 | 1 |
| 37 | 28 |
| 29 | 1 |
| 41 | 281 |
| 29 | 1 |
| 44 | 726 |
| 29 | 1 |
| e 51 | 601 |
| 29 | 1 |
| 55 | 62 |

## CHARLESTON.

PICKENS *v.* KNISELY *et al.*

Submitted June 15, 1886.—Decided October 30, 1886.

*(WOODS, JUDGE, Absent.)

1. CERTIFICATE OF ACKNOWLEDGMENT, &C., OF A MARRIED WOMAN.

In the certificate of privy examination, acknowledgment and declaration of a married woman to a deed conveying her property a substantial compliance with the statute is sufficient; therefore, where a justice certified, that the married woman "being examined by me privily and apart from her husband and having the above deed of trust dated December the 15th, 1868, fully explained to her, she, the said Sarah Jane Knisely, acknowledged the said writing to be her act and declared, that she *had* willingly *acknowledged* the same and did not wish to retract it,"—this was a substantial compliance with the statute. (p. 4.)

2. CERTIFICATE OF ACKNOWLEDGMENT, &C., OF A MARRIED WOMAN—
CONCLUSIVE EVIDENCE.

The certificate of a justice or notary of the privy examination, acknowledgment and declaration as to the execution of a deed of a

---

‡The other decisions announced at this term are published in Vol. XXVIII.
*Counsel below.

married woman is in its nature a judicial act, and in the absence of fraud or duress it is conclusive of the facts therein certified. (p. 10.)

3. AMENDMENTS.

A party will not be permitted to amend his bill, so as to make an entirely new case. (p. 22.)

4. PRAYER FOR RELIEF.

Under the prayer for general relief a party cannot recover a claim distinct from that demanded by the bill. (p. 22.)

*J. Hop. Woods* and *F. Woods* for appellant.

*Dayton & Dayton* for appellees.

JOHNSON, PRESIDENT :

On the 28th day of August, 1866, Stephen Arnold, of Barbour county, conveyed to his daughter, Sarah Jane Knisely, a tract of land in said county " subject to this condition, that the same shall not operate as a conveyance of the legal title to said land or the right to the possession thereof until after the death of the said Stephen Arnold." On the 15th day of December, 1868, L. M. Knisely and the said Sarah Jane Knisely, his wife, executed their joint and several bond to James Pickens for the sum of $1,650.00. On the 9th day of September, 1871, the same parties executed and delivered to the said James Pickens their bond for $1,200.00. On the 15th day of December, 1868, Knisely and wife conveyed in trust to R. W. Daniels, trustee, to secure the payment of said $1,650.00 bond, the said tract of land conveyed to Sarah Jane Knisely by her father, Stephen Arnold. This deed was acknowledged by the grantees before Michael Simon, a justice, on the 18th day of December, 1868, and was recorded on the same day. The certificate of acknowledgment as to Mrs. Knisely is as follows:

" *West Virginia, Barbour County, to-wit :*

" I, *Mikel* Simon, justice of Union Township, in the county aforesaid, do certify, that Sarah Jane Knisely, the wife of the above named L. M. Knisely, personally appeared before me in my township and being examined by me privily and apart from her husband and having the above deed of trust

*date* December the 15th, 1868, fully explained to her, she, the said Sarah Jane Knisely, acknowledged the said *wrightly* to be her act and declared, that she had willingly, acknowledged the same and did *knot* wish to retract it. Given under my hand this 18th day of December, 1868.

"MICHAEL SIMON, *Justice*."

On the 9th day of September, 1871, the same parties conveyed the same land to Nathan J. Coplin, trustee, to secure the said $1,200.00 bond, and on the same day acknowledged the said deed before Henson L. Hoff, justice. The acknowledgment is in almost the same words as the acknowledgment before justice Simon concluding as to Mrs. Knisely:—
" And being examined by me privily and apart from her husband and having the above deed of trust, dated September the 9th, 1871, fully explained to her, she, the said Sarah Jane Knisely, *acknowledg* the said *wrighting* to be her act and declared, that she had willingly *acknowledg* the same and did not wish to retract it."

At April rules, 1874, Pickens filed his bill in the Circuit Court of Barbour county, setting forth the above stated facts and praying, that the said deeds might be construed to ascertain, what interest Sarah Jane Knisely had in the land, and that all the interest of Knisely and wife therein might be sold, and the proceeds of sale be applied to discharge said trust-liens, and for general relief. Sarah Jane Knisely answered the bill; and in her answer she admitted the execution of the bonds but averred, that she was only the surety of her husband, and that her separate estate could not be sold to pay said debts. She admits, she signed said deeds but says, she signed them by direction of her husband. As to her alleged acknowledgment of the deed of December 15, 1868, she says :—" She utterly denies, that the same was ever acknowledged by her, and she says, that the certificate of acknowledgment and privy examination of and by her of justice Michael Simon of the date of the 18th day of December, 1868, as the same seems to be appended at the foot of the said deed, is wholly erroneous and contrary to truth and fact." As to the acknowledgment of the second deed of trust she is silent in this answer. She filed an amended answer, in which she claimed, that the certificates of her privy ex-

amination to said deeds were fatally defective, and said deeds were not binding on her.

L. M. Knisely answered the bill and in his answer said :— '' Respondent did insist upon his wife and co-defendant, Sarah Jane Knisely, signing said obligation as respondent's surety, which she thereupon did ; and she also in like manner signed her signature to the said trust-deed ; but he denies, that she acknowledged the same, and says, that the certificate of the justice to the facts stated in it as to his said wife's acknowledging the said deed are untrue and were procured to be done by the plaintiff for the purpose of acquiring by fraud the real estate of his wife in security and discharge and satisfaction of his demand against this respondent, who was unable to pay him otherwise." He says nothing about the certificate to the second trust-deed. He pleads usury in the debt and claims, that he is entitled to be relieved of all usurious excess.

Depositions were taken. The cause was referred to a commissioner to state an account. The report was filed and exceptions endorsed, which were not passed upon by the court. On the 30th of October, 1883, the court dismissed the bill with costs. From this decree Pickens appealed.

The court must have dismissed the bill, because in its opinion the certificate of acknowledgment of Mrs. Knisely to the two deeds of trust executed by her on her separate estate were fatally defective ; for if they are not, one of the deeds at least would be good, even if the other should be held void, on the ground that she never acknowledged it at all.

Are the two certificates above referred to fatally defective? It is well established by our Court, that a literal compliance with the statute is not required, but there must be a substantial compliance with all the requirements thereof. ( *Watson* v. *Michael*, 21 W. Va., 568). Do the certificates substantially comply with the statute ? We have but one case in our Court having any bearing upon the subject, and that is *Watson* v. *Michael, supra*, where it was decided, that the words—" and the deed being read to her "—were not equivalent to the words required by the statute—" being fully explained to her." In all of the other cases there was a clear *omission* of one or more of the positive requirements of the statute. Here the omitted words are—" willingly executed

the same ;"—and the substituted phrase is— "had willingly acknowledged the same." These certificates show, that the married woman personally appeared before the justice, and proceed—"and being examined by me privily and apart from her husband and having the above deed of trust date December 15, 1868" (in the one case and September 9, 1871, in the other) "fully explained to her, she, the said Sarah Jane Knisely, acknowledged the writing to be her act and declared, that she had willingly acknowledged the same and did not wish to retract it."

In *Boykin* v. *Rain*, 28 Ala. 332, the statute required the certificate to show, "that she signed and sealed and delivered the same as her voluntary act and deed without a*ny fear*, threats or compulsion of her husband." The certificate showed, "that she signed, sealed and delivered the above instrument of mortgage-deed on her own free will and accord and without *any fear*, persuasion or threats from her said husband, and for the express purposes therein stated." The court decided, that the certificate was not either in words or substance the acknowledgment required by law. It was essential, that she should acknowledge among other things, that she executed the mortgage "without *any* fear." She has not acknowledged this nor anything *in substance the same.* It will not do to say, she acknowledged something *like* it. Resemblance is not identity. Fear may exist on the part of the wife, without any force, persuasion or threats from the husband. Her acknowledgment, that she executed the deed on her own free will and accord is not identical in substance with acknowledging, that she executed it freely without any fear of her husband. Fear may exist and often does exist in a degree so moderate, as not to destroy the freedom of the will."

In Pennsylvania the statute required, that the person taking the acknowledgment "should read to the wife or otherwise make known to her the full contents of the deed." In *McIntyre* v. *Ward*, 5 Binn. 296, it appeared, that the certificate of acknowledgment showed, that the wife "acknowledged the indenture of bargain and sale to be her act and deed according to its true intent and meaning, and the land and premises therein mentioned to be bargained and sold

with all and every the appurtenances to be the right, title, interest, estate and property of the within named Samuel Todd, his heirs and assigns forever." The court held that a substantial compliance with the statute. Tilghman, C. J., for a majority of the court said :—"She knew then, that the land was conveyed to Todd in fee simple, which is the essential part of the deed ; and it may be fairly presumed, that this was communicated to her by the justices, who took her acknowledgment, although I do not consider that to be material, provided it appears, she had the knowledge. * * * Considering the whole of this certificate then, it sufficiently appears, that the contents of the deed were known to her."

In *Shaller* v. *Brand*, 6 Binn. 435, it appeared, the statute directs the person taking the acknowledgment of a married woman "shall examine the wife separate and apart from her husband and shall read or otherwise make known to her the full contents of the deed ; and if upon such separate examination she shall declare, that she did voluntarily and of her own free will and accord seal and as her act and deed deliver the said deed without coercion or compulsion by her husband, then the said deed shall be good and valid." The certificate as to the wife showed only this :—"She, the said Catharine, being of full age, separate and apart from her husband by me examined, and the full contents made known to her, voluntarily consenting thereto." In this case, Tilghman, C. J., delivering the opinion of the court, said :—"It is not straining the expression—'voluntary consenting thereto'—too far to say, that it implies, she declared, that she executed the deed voluntarily, and that is sufficient; for if the execution was voluntary, it was without coercion or compulsion. I am clearly of opinion therefore, that by this deed the estate of the wife was legally conveyed."

We do not say, that we approve those two decisions in their entirety, but cite them to show, how liberal the Supreme Court of Pennsylvania has been in holding words used to be the equivalent of those required by the statute. We shall not have to go to this extent of liberality to hold the certificates here a substantial compliance with the statute.

In giving a construction to the language used we must look to the whole certificate, just as we would in construing

any other instrument. The justice certifies, that he has examined Mrs. Knisely separately and apart from her husband; that during such privy examination he fully explained to her the said writing, that she then acknowledged the same, that she then declared, that she "*had* willingly *acknowledged* the same, and that she did not wish to retract it." When it is said, she *had* willingly acknowledged the same, it seems clear to us, taking the whole certificate together, it was not meant, that she had during the privy examination then being had "willingly acknowledged the deed." There would be no meaning in that. It was not the duty of the justice to ask her, whether she was willingly then acknowledging the paper, or whether she was willingly then declaring, that she had "willingly" executed the same, and did not then wish to retract it. If we give the certificate the construction contended for by counsel for appellee, we would have to hold, that during her examination separate and apart from her husband she acknowledged the deed and declared, that she had willingly then acknowledged it, and she did not wish to retract the acknowledgment thus willingly made. What was it she declared, that she did not wish to retract? Certainly the execution of the deed. And when she declared, that she "had willingly acknowledged the deed," she meant that she had willingly executed it; that is, she declared, that she had willingly signed and sealed the deed free from the control of her husband, and that *act* she did not wish to retract. This is the true sense and construction of the instrument; and it would be technical indeed to hold, that this was not a substantial compliance with the statutory requirement. In the case of *Boykin* v. *Rain*, 28 Ala. 332, there were no words used, which by any reasonable construction could be held to mean, that she had executed the deed without any fear of husband. It was necessary, that such words should be used. Here, we think, it is plain, that every requirement of the statute was complied with.

But as to the deed of December 15, 1868, a more serious question is raised. The answers of the defendants both plead the fact, that Mrs. Knisely never acknowledged that deed at all. This is sustained by her own deposition and also by the deposition of her husband, L. M. Knisely, and by the justice

Michael Simon; and there is not a particle of evidence save the certificate itself to contradict these witnesses. This raises the interesting question,—whether under any circumstances the certificate of the justice or notary to the examination of a married woman can be contradicted by parol, and the further question, whether, if so, the evidence of the justice or notary is competent to impeach it. The case of *Harkins* v. *Forsyth*, 11 Leigh, takes very strong ground against both propositions.

In that case a bill was filed to enforce a deed of trust. Mrs Harkins in her answer admitted, that she signed the deed. She averred, that the two justices of the peace asked her in the presence of her husband, if she acknowledged it to be her act and deed and had willingly signed, sealed and delivered the same, and whether she wished to retract it. But she averred, and she charged the fact to be, that the justices did not read the deed to her nor in any manner whatever explain it to her. On the part of the defendants the depositions of both the justices were taken, and they say, that they did not read or explain the deed to Mrs. Harkins, it not being their habit to do so. The court decreed the land to be sold. Elizabeth Harkins appealed. Tucker, President, said the question was one of great importance and of first impression in that Court. After stating, that at common law a married woman could not by joining in a deed bar herself or those claiming under her of her own estate, he said:—"In process of time fines were adapted to this end, by which the rights of a wife might be successfully passed. But to prevent imposition upon her it was at length provided by statute, that, where a *feme covert* was one of the parties to a fine, she should be privily examined, and, if she refused her assent, the fine should not be levied. He says, this proceeding was the prototype of our privy examination. But though the privy examination was positively enjoined by statute, yet if a *feme* was allowed to acknowledge a fine without examination, it nevertheless bound her and could not be reversed; for she could not contradict the record, which set forth her examination. He shows, that in Virginia as a substitute for the fine a deed accompanied by a privy examination of the *feme* has been adopted, which

could be either before a court of record or before two justices
of the peace. In both cases the same requisitions exist.
Where this examination is had in court, it must be conceded,
that it is altogether conclusive, and that no allegation can
be admitted to contradict the entry, however much that may
be at variance with the real facts. The second mode of privy
examination is by two justices of the peace; and it seems
to be supposed, that, because it is a matter in *pais*, the cer-
tificate of the justices may be directly contradicted and the
deed vacated by the testimony of witnesses and even by the
depositions of the justices themselves. He says, such a po-
sition is at variance with the spirit and object of the law and
also with the very terms of the law. He further says :

"If the door be once opened to the contradiction of the
magistrates' certificates, where is the point, at which we
shall stop ? The writing must be explained; and, if the cer-
tificate, that it was explained, can be contradicted, what
shall prevent inquiry, whether it was truly explained? For,
if not truly explained, the condition of the *feme* is surely
not better, than if the deed were not explained at all. *   *
* To me indeed it seems, that the demon of mischief could
not suggest a notion better calculated to throw all things in
relation to titles into their original chaos than the establish-
ment of the principle here contended for."

He admits, that notwithstanding the conclusiveness of the
certificate at law, the *feme* may be relieved in equity, when
it has been obtained by the fraud of the party claiming
under the deed. In that case there was no proof of fraud.
At most it was the omission to carry out one of the require-
ments of the statute. It is a very different case, in which
the married woman was not before the justice at all, or being
there had positively refused to acknowledge the deed or
make the declaration, that she had willingly executed and
did not wish to retract it, and the justice wilfully or corruptly
in the one case or the other certifies to falsehoods through-
out.

In *Rollins* v. *Menager*, 22 W. Va. this Court followed
*Harkins* v. *Forsyth*, and decided, that in a case like that,
where there was no proof of fraud, the *feme covert* will not
be permitted by parol evidence to contradict the facts set

out in the certificate of her private examination, acknowledgment and declaration, so as to avoid the effect of the deed of trust, unless she first establish by evidence satisfactorily, that with the concurrence of those claiming under the deed of trust the married woman has been defrauded or imposed upon by the pretended privy examination, acknowledgment and declaration.

The authorities hold, that the certificate by a justice or notary of the privy examination, acknowledgment and declaration of a married woman as to the execution of a deed by her is in its nature a judicial act and in the absence of fraud or duress is conclusive of the facts certified; that a purchaser *bona fide* and without participation in or notice of the fraud is protected by it; but as to all other persons parol evidence is admissible to show fraud or duress connected with the acknowledgment. *White* v. *Green*, 107 Mass. 325; *Moore* v. *Fuller*, 6 Or. 272; *Singer M'f'g Co.* v. *Rook*, 84 Pa. St. 442 (24 Am. Rep. 204); *Johnston* v. *Wallace*, 53 Miss. 331 (24 Am. Rep. 699); *Stone* v. *Montgomery*, 35 Miss. 83; *Rocnovek* v. *Marak*, 54 Tex. 201 (38 Am. Rep. 623); *Williams* v. *Powers*, 48 Tex. 141; *Louden* v. *Blythe*, 37 Pa. St. 22; *Michener* v. *Cavender*, 2 Wright 334; *Jameson* v. *Jameson*, 3 Whart. 457; *Schrader* v. *Decker*, 9 Barr 14; *Baldwin* v. *Snowden*, 11 Ohio St. 203; *Hecter* v. *Glassgow*, 79 Pa. St. 79; *Ennor* v. *Thompson*, 46 Ill. 214; *Luckman* v. *Harding*, 65 Ill. 505; *Kerr* v. *Russell*, 69 Ill. 666; *Rollins* v. *Menager*, 22 W. Va. 461; *Henderson* v. *Smith*, 26 W. Va. 829).

*Schrader* v. *Dicker*, 9 Barr, *supra*, was a very hard case, and yet it was held, that even under those circumstances, a *bona fide* purchaser without notice could not be affected by the fraud; but in that case the wife was relieved, because the grantee participated in the fraud. The circumstances, as stated by the judge, were as follows: The deed was given to a tavern-keeper partly in payment of a profligate husband's debt contracted in a course of drunkenness and debauchery and was thus procured: Means, the grantee, attended by his wife and a man called Doninger, who had no proper concern with the business, and an inexperienced justice picked up by the way repaired to the house of the hus-

band, while the wife was in the throes of child-birth. Means, his wife and Doninger entered the sick woman's chamber and met in the first instance with a repulse, they had reason to expect. It was not until she had been badgered for two hours and worn out by the importunity of her husband as well as deceived with false assurances by the rest of the party of her husband's right and ability to redeem the land, that they worked her to their will. The justice was then called in, and having first asked her in the presence of her husband, whether the instrument, she had executed, was her deed, he signed the certificate, which had been brought along for the occasion. Chief Justice Gibson then says:

"If these circumstances are proved, particularly the crisis selected for the transaction, the instruments employed to bend her to their purpose and the deception effected by the false assurances, they will show the existence of a conspiracy to strip her of her property by force and fraud, and the jury will have no more to do than to find for the plaintiff all the land, which had not been paid for to Means or his voluntary grantee, and all that may have been paid for with knowledge of the fraud. To do less would disgrace the administration of justice." The judgment was reversed and a new trial granted.

In *Central Bank* v. *Copeland and wife*, 18 Md. 305, it appeared, that a wife was by threats and intimidation induced to sign and acknowledge a mortgage-deed. A bill was filed to foreclose, and the wife in her answer pleaded the threats and intimidation, and proof was taken, which clearly showed it. It did not appear, that the grantee participated in the fraud or had any notice of it, yet the Court held, that the fact, that the mortgagee took no part in the execution of the mortgage by the wife, does not strengthen his right to set it up as valid nor impair hers to avoid it. The acceptance of a mortgage implies adoption by the mortgagee of the husband's agency in procuring it.

This decision we disapprove, as it seems to us to be against both reason and authority. As between the grantor and grantee, who participated in the fraudulent execution or acknowledgment of the deed, it is in a court of equity open to impeachment; but, where the grantor signed and acknowl-

edged the deed, it can not be impeached as to an innocent purchaser. But how stands the case of a married woman, whose acknowledgment of a deed appears regular on its face, yet she never appeared before the justice, who wrote the acknowledgment.

In *Michener* v. *Cavender*, 2 Wright 38, the Court decided, that, where in a mortgage of a married woman's separate estate the alderman falsely or by mistake certified to the separate examination and acknowledgment of the wife, who neither signed the mortgage nor appeared before him, the mortgagee will be affected by the fraud, though he was not present at the acknowledgment nor informed of what passed. He will not be presumed to be a *bona fide* purchaser; nor is it necessary to prove notice to him of a fraudulent mistake. Woodward, J., after stating the law, as we have above, said :

"Such is the doctrine of the cases in our books, and on the strength of it the learned judge ruled, that the gross blunder, if not fraud, of the alderman in certifying to the separate examination and acknowledgment of a wife, who had not signed the mortgage nor appeared before him, could not affect Cavender, the mortgagee, because he was not present, when the mortgage was acknowledged, and was never informed of what passed, and that he was to be presumed to be a *bona fide* purchaser. If the doctrine of notice is to be applied in this manner, no married woman's estate is safe, and the statutes, that have been passed for her protection, are as worthless as waste paper; for whenever her husband goes into a conspiracy to strip her of her lands, the transaction is not likely to be attended with any circumstances of notice, that are susceptible of proof. Here for instance is a mortgage upon Mrs. Michener's separate estate made to a conveyancer and duly witnessed and acknowledged, which for aught that appears of record, she never saw nor heard of, until she was sued upon it by this *scire facias*. Her name appears to the printed copy on our paper-books, but when or by whom it was subscribed to the original instrument, does not appear. It certainly was not there, when the alderman witnessed and acknowledged the mortgage. The statute requires the signature to precede the acknowledgment, and

without signature and acknowledgment according to the statute it is not and can not be a mortgage on her estate. To call the mortgageê a *bona fide* purchaser, and to put her to proof, that he knew, she had been cheated, would be like making her right to reclaim stolen goods dependent on the receiver's knowledge of the felony. Suppose the mortgage was a forgery out and out, and Cavender chose to invest his money in a purchase of it, must it be enforced, because he did not know, he was buying a forged instrument? An instrument known to be forged would not be purchased and would therefore be worthless to the forger. Counterfeit notes would never be issued, if a herald went before to proclaim their spuriousness. But, because they are taken without notice, do they become genuine? Is every bank and individual to redeem whatever obligations, *bona fide* holders may obtain against them, without regard to the question, whether the obligations have ever issued or not? To carry the law of notice to such an extent would subvert all law and justice. * * * * The only excuse the alderman gives for his reckless conduct is, that 'George told me it was a temporary matter, and that he would make it all right, if Mr. Cavender objected.' To George and the alderman Mr. Cavender must look to make it all right; but he must not touch Mrs. Michener's separate estate by means of such a mortgage."

In *Allen* v. *Lenoir*, 53 Miss. 321, the bill was filed to foreclose a mortgage purporting to have been executed by both husband and wife and purporting to have been acknowledged by the wife. In her answer she stated, that "the deed was signed by her but was never acknowledged, because, when she went to Beulah for the purpose of acknowledging said mortgage, she was informed, that the clerk of the probate court, John B. Hunt, was intoxicated and declined to see her, and she left the mortgage in the store of Martin & Christmas adjoining the office of said clerk intending to return and acknowledge it; but she never did see said clerk, John B. Hunt, in relation thereto and never did acknowledge said mortgage before said Hunt or any other officer." Thomas B. Lenoir in his deposition stated that he went to Beulah to get the mortgage, that it was then in the hands of

the clerk, and there was no certificate of acknowledgment to it. The clerk, John B. Hunt, stated to deponent, that "he had been told, Mrs. Lenoir had been there, but he was not fit to be seen by a lady and did not see her and had not seen her since; but, as she had previously acknowledged a similar mortgage before him, and he knew her handwriting, he would not give them any further trouble but would certify to it." Lenoir also stated in his deposition, that the certificate of acknowledgment by Mrs. Lenoir to the mortgage was made by the clerk, John B. Hunt, at deponent's request. There was some other testimony. The Court ordered a sale of the mortgaged property; and an appeal was taken.

Campbell, J., delivering the opinion of the Court, said:—"We can not escape the conclusion after an earnest effort to avoid it, that the mortgage was never acknowledged by Mrs. Lenoir, and that the certificate, that she had acknowledged it is untrue. A proper acknowledgment is an essential part of the conveyance of her land by a married woman. The bill charges the execution of the mortgage by Mr. and Mrs. Lenoir. In the answer she denies, that she ever acknowledged it. There is nothing but the official certificate of her acknowledgment to contradict her answer, which is supported by a number of circumstances, which fully sustain it." The decree was reversed.

In *Johnston* v. *Wallace*, 53 Miss. 331, it was held, that a deed having been signed by a husband and wife, and she having appeared before an officer competent to take her acknowledgment and having acknowledged it in some manner and he having certified on the deed, that she had acknowledged on a private examination separate and apart from her husband, that she had executed the deed freely and voluntarily without any fear, threats or compulsion on the part of her husband, the truth of the certificate as to its statements can not be questioned as against a *bona fide* purchaser. It was also decided that the case did not present the question, whether a certificate of acknowledgment can be shown to be a fraud and forgery, which was decided in the affirmative in *Allen* v. *Lenoir*, to which view the Court adheres. In this case Campbell, J., who also delivered the opinion in *Allen* v. *Lenoir*, draws a distinction between the case, in

which the married woman was not before the justice for the purpose of acknowledging a deed, and the case where she does appear and acknowledge it in some manner, and the justice certifies to parts of such acknowledgment, that are false. In the latter case the Court holds, that as against a *bona fide* purchaser the certificate can not be impeached, and in the other it can be impeached. The Court says as to the former case :—" But, where the person never appeared before an officer to acknowledge the deed, but he falsely certifies, that she did, his act is wholly without authority of law and void *in toto*. All must be subject to the risk of an occasional forgery by officers authorized to take acknowledgments. Although liable to be deceived and imposed on by such an act no one can claim, that a married woman's estate should be devested by forgery. And when she in fact did not appear before the officer to acknowledge, although he may certify, that she did, she may show, that she did not ; for his act is *wholly without authority*, and she but rights herself and wrongs no one in proving the truth of the case; for no one can claim by virtue of a forgery. The law requires no other evidence of the acknowledgment of a deed by a married woman but the prescribed official certificate. Indeed no other evidence of acknowledgment, besides the official certificate can be received. A cloud of witnesses attesting the fact of the fullest acknowledgment will not supply the want of the official certificate of acknowledgment or an omission in it when made."

In all the cases the struggle has been to protect the married woman in her right of property on the one hand and the innocent purchaser, who has parted with his money for her land, on the other, and to uphold the rights of land-owners, who must necessarily rely on the correctness of the records of land-titles for their protection. . Therefore it has been uniformly held, that as regards an innocent purchaser of the land of a married woman the certificate of her acknowledgment of the deed by an authorized officer is conclusive of the facts, which are therein stated. This principle, it is contended, applies to every case, where the acknowledgment has been certified by an officer authorized to take it, whether the married woman ever acknowledged it or not.

But I have found no case, where it has been held, that, if it clearly appeared by proper parol evidence, that the married woman never in fact appeared before the officer to acknowledge the deed, and the certificate contains all the requirements of the law, just as though she had in fact appeared before the officer, the deed would operate to devest her estate even in favor of an innocent purchaser; but we have cited two cases, where it has been held, that under such circumstances her estate could not be devested.  It does seem to me, that strong as may be the claims of innocent purchasers, who have been thus imposed upon, by the gross fraud and collusion of a wicked husband and a justice, who has no regard for the rights of property, yet the claim of an innocent wife, who without the least fault of hers has thus been the victim of such an attempted spoliation of her land makes a much stronger appeal to the Court.

Our constitution requires the legislature to " pass such laws, as may be necessary to protect the property of married women from the debts, liabilities and control of their husbands,"—(sec. 49, Art. VI.)  The legislature has done so and thrown around the married woman many safeguards, one of which is the law, that no deed shall convey her property, unless she has been by a proper officer examined privily and apart from her husband in relation thereto, and, after it has been fully explained to her, she then acknowledges it and declares, that she willingly executed it and does not wish to retract it.  It would give her but little protection, if a certificate of such privy examination, acknowledgment and declaration could take from her her estate, when in fact she did not know, that any such certificate was contemplated and did not appear before such officer at all.

For reasons of public policy and to protect innocent purchasers it has been uniformly held, that, when a married woman appears before a justice for the purpose of acknowledging a deed and does in some manner attempt to do, what the law requires to be done, the certificate is conclusive of the facts therein stated as regards innocent purchasers. This is a necessary rule of law and not a harsh one to her; because, if the justice has not asked her all the questions required or has omitted anything which the statutes requires,

as fully explaining the deed to her, she may notify the purchaser of that fact, before the deed is delivered to him, and thus prevent it from operating to pass her title to the property. But, where she has not appeared before the officer, she has no opportunity to save her property, any more than the man has, whose name is forged to a negotiable note. In the case of the note no one would hesitate to say, that it would be void in the hands of an innocent holder for value. Why then should it be said, that the married woman should be held for the act of the justice, which was as much without authority or warrant in law as the forgery of the man's name to the note? If this can be done, there is no protection to a married woman's property, there is no protection to any man's real estate; for it is just as easy for a justice, who has no fear of consequences, to forge the signature of a man to a deed conveying his farm to another and then make a false certificate of his acknowledgment thereof, as to make the false certificate of the acknowledgment of a married woman. The purchaser could then take it from the one, who had procured the justice to do the act, and be entirely innocent of the forgery and fraud.

No one would for a moment suppose, that under such circumstances the man thus imposed upon should lose his farm. The innocent purchaser in such a case would have every reason to believe, that the deed had been signed by the grantor, or that it had been signed for him by another, because he had according to the certificate of the justice acknowledged it as his signature, which would be conclusive against him, if he could not impeach it in the hands of an innocent purchaser.

A married woman's signature to a deed amounts to nothing in any one's hands as to her, until she has acknowledged the deed before a proper officer after privy examination, and he has certified, that all the requirements of the statute have been complied with, and the deed has been recorded. She ought to have the same right to impeach the certificate of her appearance before the officer making it, when in fact she did not appear before him, that a man has to prove a deed professing to be signed by him to be a forgery. The rights of property are too sacred to al-

low them to be swept away without the knowledge of the owner, when he has made no contract of sale with the pretended purchaser. No consideration of public policy can justify the robbing of a married woman of her separate estate.

If therefore it legally appears in this record, that the deed of the 15th of December, 1868, which appears to have been properly acknowledged by Sarah Jane Knisely by the certificate of Michæl Simon the justice, was not acknowledged by Mrs. Knisely ; that is, if it appears by proper proof, that that certificate is totally false, that Mrs. Knisely never appeared before said justice to acknowledge said deed, the deed as to her is void even in the hands of an innocent purchaser for value. In a case of this character the proof to sustain the impeachment of the certificate should be of the clearest, strongest and most convincing character. (*Hourtienne* v. *Schoorer*, 24 Mich. 274; *Kerr* v. *Russell*, 69 Ill. 666). The proof should be almost, if not quite, as strong as that required to correct a mistake in a deed; that is, it should not be loose, equivocal or open to reasonable doubt or opposing presumptions. (*Jarrell* v. *Jarrell*, 27 W. Va. 743). The reason for this is, that the writing itself is regarded as evidence so strong, that only other unequivocal evidence irresistibly conclusive is sufficient to overthrow it. It is not necessary that there should be no opposing or contradictory evidence ; but the evidence, that the certificate is totally false, must be so strong as to remove every reasonable doubt.

If the evidence in this cause is competent, it comes up to the full requirement of the rule, as we have stated it. There can be no doubt of the fact, if the evidence is competent, that Mrs. Knisely never appeared before justice Simon at all to acknowledge the deed of December 15, 1868, as certified by said justice in his certificate attached to the deed. Mrs. Knisely herself testifies, that she did not appear before him ; and both Knisely and the justice depose, that the justice made the certificate in the absence of Mrs. Knisely, while he was sitting on his horse in the public road. The justice in his deposition, which was excepted to in the Court below for incompetency, says, that Mrs. Knisely did acknowledge before him a deed of trust to secure the $1,650.00 to Pickens,

which deed was executed to W. W. Daniels, trustee. He says, she never acknowledged but one deed of that kind. Being asked, whether, after he had taken her acknowledgment as stated, L. M. Knisley did not bring another deed of trust bearing date as before stated to W. W. Daniels, trustee, to secure the plaintiff the said sum of $1,650.00, and, if so, what he did with said deed of trust, he answered:

"Like a deed of trust was acknowledged this morning, and the evening of the day after L. M. Knisely met me on the road and says to me:—'Squire, Pickens objects to the deed of trust on account of your certificate,' and I asked him what was the matter with that:—'Well,' says he, 'you put both certificates of me and my wife in one'—and then he said:—'I have drawn up new certificates for you by an old one I had, and the deed of trust is all right with the exception of your certificate.' Then I took the deed of trust and looked at it, and I saw his name and William Daniels' name, which I thought to be the same one. The same amount at least was in it and her name. I saw the certificates were changed, and then I signed them. I had been in the practice of not drawing up the certificates to the acknowledgment of a deed for perhaps a month or more after the acknowledgment. I suppose, I did not have this particular deed of trust, when Mr. and Mrs. Knisely acknowledged the deed of trust, but it was one of the same date and the same amount. L. M. Knisely to the best of my recollection never acknowledged the deed, as certified to."

But it is here insisted, that Justice Simon's testimony was incompetent to impeach his certificate. In *Harkins* v. *Forsyth*, 11 Leigh, it was not only held, that the justice's testimony was incompetent, but also that all testimony was incompetent to impeach the certificate in that case, because there was no fraud or duress claimed. In a case like that, we have seen, the authorities generally hold, that evidence can not be heard to impeach the truth of the certificate.

In *Jourdan* v. *Jourdan*, 9 Serg. & R. 268, it was held, that the deed of a married woman was void, where the certificate of her examination did not show, that she was examined separate and apart from her husband, and that the

parol evidence of the justice was inadmissible to show, that he in fact did examine her separate and apart from her husband.

In *Stone* v. *Montgomery*, 35 Miss. 83, the deposition of the justice was taken to show, that the statements made in his certificate were untrue, and the Court said : "We are of opinion, that the officer could not be examined for such a purpose. His official acts are done and certified under oath, and it would be mischievous in the extreme to permit such a person to appear as a witness and falsify his own solemn act. Such a course would expose weak or dishonest officers to the most dangerous temptations and render the tenure of property unsafe and precarious by subjecting the evidences of titles, under which it was held, to the frail and uncertain memory or to the corruption of officers, who have in due form certified to the regularity of their acts." In that case the only irregularity claimed was, that the examination of the wife was "in the presence of her husband."

In *Bank* v. *Copeland*, 18 Md. 305, it was held, that the magistrate, who took the acknowledgment of a married woman to a deed, is not from considerations of public policy, if from no other, a competent witness to contradict or impeach his certificate of acknowledgment. In that case it clearly appeared, that the wife was before the justice ; but it was insisted that by threats, &c., she was induced to acknowledge the deed.

In *Allen* v. *Lenoir*, 53 Miss. 321, evidence of the declarations of Hunt, who took the acknowledgment, which declarations showed, that the married woman was not before him, were objected to, and the Supreme Court said :—"The Chancellor did err in not suppressing the evidence of what Hunt, the clerk, whose certificate of acknowledgment appears on the mortgage, told the witness about the certificate. It was incompetent, both because it was hearsay, and because it impeached the official certificate of Hunt."

In the case of *Michener and wife* v. *Cavender*, 2 Wright 334, the only evidence to impeach the certificate was given by the alderman, who took the acknowledgment. He testified that the married woman was not before him to be examined at any time. His testimony was taken under ex-

ception to his competency as a witness to contradict his own official act. Judgment was had against the married woman in the court below, on the ground that the certificate could not be impeached even under these circumstances in the hands of an innocent purchaser. The Supreme Court reversed the case and necessarily considered the testimony of the alderman, although the question of his competency was not alluded to in the opinion. The court quotes from his evidence without saying anything about his competency.

In *Rollins* v. *Menager*, 22 W. Va. 461, the statement of the case (p. 465) shows, that the justice, who took the acknowledgment, was examined as a witness; but it appears, that his evidence was in favor of and not against his certificates. His evidence is also referred to in the opinion (p. 471). There seems to have been no exception to it, and there could be no legal exception to it, because it did not tend to impeach his certificate. It was formerly held, that attesting witnesses to a will could not contradict the facts set out in their attestation. (*Goodlittle* v. *Clayton*, 4 Burr. 2,224). But this Court has held, that the question of the execution of a will is to be determined like any other in view of all the legitimate evidence in the case; and no controlling effect is to be given to the testimony of the subscribing witnesses. Their direct participation in the transaction must of course under ordinary circumstances give great weight to their testimony, but it is liable to be rebutted by other evidence either direct or circumstantial. But it was further held, that the testimony of a subscribing witness against the validity of a will must be viewed with suspicion. (*Webb* v. *Dye*, 18 W. Va. 376).

It seems to us, that it is admissible to hear the evidence of a justice, who took the acknowledgment of a married woman, to prove, that she never did in fact appear before him to acknowledge a deed, although he has certified, that she did. It is of course permitting him to testify to his own baseness; but though his evidence must be by court and jury viewed with suspicion, yet, we think, it is competent in such a case and should be received for what it is worth, and, unless supported by other facts and circumstances in the case, it would not be regarded

as sufficient to impeach his certificate. Especially do we think, that in this State his evidence is competent, since even the parties in interest with certain exceptions are competent to testify in their own behalf.

But it is insisted, that the testimony of Knisely and wife was incompetent. The record does not show the date, at which their depositions were taken, but the decree dismissing the bill was entered on the 30th day of October, 1883. On the 27th day of March, 1882, the legislature passed an act declaring, that " in any civil action, suit or proceeding the husband or wife of any party thereto or of any person, in whose behalf any such suit or proceeding is brought, prosecuted, opposed or defended, shall be competent to give evidence the same as any other witness on behalf of any party to such suit, action or proceeding, except that no husband or wife shall disclose any confidential communication made by one to the other during their marriage." (Sec. 22, chap. 160, Acts 1882, p. 544). This act went into effect ninety days after its passage, on the 27th of June, 1882, so that it was in full force and vigor, when the decree of October 30, 1883, was heard on the depositions, &c. The language is the husband and wife " shall be competent to give evidence." Within the meaning of said section the competency of the testimony taken is determined, at the time the Court reads it, and not at the time the depositions are taken. (*Zane* v. *Fink*, 28 W. Va. 693). So at the time these depositions were read, both husband and wife were competent to give evidence. Therefore the testimony of Knisely and wife was competent.

The evidence all being competent leaves no doubt, that the married woman, Mrs Knisely, never acknowledged said deed, and it is therefore void as to her. The second deed of trust, we have found, is valid; but it is necessarily subject to the life-estate of Stephen Arnold, the grantor of Mrs. Knisely, as appears by the terms of the deed. (*Love* v. *Teter*, 24 W. Va. 745).

It is claimed, that the land is subject to the curtesy initiate of the husband and father, that if the deeds were void, still the bill ought not to have been dismissed, because Mrs. Knisely signed the notes, and the rents and profits of her real

JOHNSON, PRESIDENT:

Since writing the preceding opinion, and since the dissenting opinion was written, I have found the following authorities sustaining the position, that where a married woman did not in fact acknowledge a deed conveying her property, and a notary or other officer has certified, that she did, and the certificate is in regular form, she may impeach such certificate, even when the property has been conveyed to an innocent purchaser ignorant, that such certificate is false and fabricated: *Moore* v. *Holt*, 37 Ark. 148; *Meyer* v. *Gossett*, 33 Ark. 377; *Donahue* v. *Mills*, 41 Ark. 421; *Williamson* v. *Carskaden*, 36 Ohio St. 664; *Ford* v. *Osborne*, Supreme Court Ohio decided March 17, 1887, 24 Reporter Sept. 21, 1887; *Russell* v. *Baptist Theological Union*, 73 Ill. 337; *Smith* v. *Allis*, 52 Wis. 337; *Van Orman* v. *McGregor*, 23 Ia. 300; *Herrick* v. *Musgrove*, 67 Ia. 63; *Hourtienne* v. *Schnoor*, 33 Mich. 274; Tilghman C. J, in *Barnett* v. *Barnett*, 15 Serg. & R. 72; *Ins. Co.* v. *Nelson*, 103 U. S. 544.

estate are subject to their payment. No such relief, as is claimed, could be had in this suit. The bill was not filed for any such purpose, and it could not be amended for such a purpose, as that would make an entirely new case. The debt of a general creditor of a married woman does not constitute a lien or charge upon her separate estate real or personal prior to the institution of the suit by such creditor to subject such estate to the payment thereof. General creditors of a *feme covert* have no priority over each other, unless it be acquired by superior diligence in proceeding to obtain satisfaction. (*Hughes* v. *Hamilton*, 19 W. Va. 366; *Piercy* v. *Beckett*, 15 W. Va. 444; *Lamb* v. *Cecil*, 28 W. Va. 653).

We have examined the evidence and do not think, that the usury charged in the answer is proved.

For the error, which we have pointed out, the decree of October 30, 1883, is reversed with costs to the appellant; and this cause is remanded to be further proceeded in according to the principles herein announced.

----

GREEN, JUDGE, dissenting :

I fully concur with President Johnson, that the certificate of a justice of the privy examination and acknowledgment of a married woman of a deed conveying her land is in the nature of a *judicial* act, and that she cannot by parol evidence contradict the facts set out in the certificate of the justice so as to avoid the effect of such deed, when it has been executed by her and duly recorded with the appended certificate in due form, unless she first establish by satisfactory parol evidence, that with the concurrence of those claiming the land under her deed she had been defrauded or imposed upon by the *pretended* privy examination of her by the justice. This is unquestionably the law in this State. It is so expressly laid down in the second point of the syllabus of *Rollins* v. *Menager*, 22 W. Va. 462. In fact it is the law, so far as I know, in every State in the Union except Missouri and Mississippi; and in the latter State it is the law with a qualification, which, I will show, is without any reasonable foundation and contrary most obviously to justice and sound public policy. In Missouri it is held, that a

certificate of a justice, when in conformity with the statute, is only *primâ facie* evidence of any of the facts recited in it; and parol evidence is admissible in every case to contradict the facts so recited and to show, that the acknowledgment and privy examination were not such, as were stated in the certificate, and not such, as the law required. For example, in that State the wife may prove by parol evidence, that the justice or other officer did not, as he states in his certificate, fully explain to her the ·deed or examine her privily and apart from her husband or inquire, whether she had willingly executed the same. ( *Wannell* v. *Kern*, 57 Mo. 480; *Steffen* v. *Buer*, 70 Mo. 399; *Sharp* v. *McPikel*, 63 Mo. 300; *Clarke* v. *Edwards*, 75 Mo. 87; *Belo* v. *Mayer*, 79 Mo. 67).

President Johnson in his opinion, though he does not refer to these Missouri cases, shows clearly their absurdity and the mischief which would necessarily follow from the adoption of such views; and he cites a few of the immense number of cases to be found in the reports of almost every State of the Union disapproving these Missouri views of the law. The conclusion drawn by him is, to use his own language, as follows :—The authorities hold, that the certificate by a justice or notary of the privy examination, acknowledgment and declaration of a married woman as to the execution of a deed is in its nature a judicial act and in the absence of duress or fraud is conclusive of the facts certified; that a purchaser *bona fide* and without participation in or notice of the fraud is protected by it; but as to all other persons parol evidence is admissible to show fraud or duress connected with the acknowledgment." With this conclusion I entirely concur ; and it is in direct antagonism to the Missouri law, as expounded in the Missouri cases before cited.

In the Missouri cases the court does not cite any cases in other States as sustaining their views of the law ; and, so far as I know there are no such decisions. In Mississippi these views are partially sustained as shown in President Johnson's opinion and by *Allen* v. *Lenoir*, 53 Miss. 321, and *Johnston* v. *Wallace*, Id. 331, cited by him. These cases show, that according to the views of the Mississippi courts the title of an innocent purchaser of real estate, who has purchased *bona fide* and without notice of any defect in the title he ac-

quired through a deed from a married woman and her husband duly recorded with the certificate of a notary or other qualified officer thereto attached, which is in the form required by law, and which, as required by law, sets forth, that the married woman personally appeared before him in his county and was examined by him privily and apart from her husband, and that he fully explained the deed to her, and she then acknowledged it to be her deed, could never be destroyed by any parol proof, that any of the statements set forth in the certificate were false, with the single exception of the statement, that the married woman personally appeared before the notary or other officer. While every other statement made in such certificate must be regarded as absolutely true, so far as an innocent purchaser is concerned, and not to be contradicted by any parol testimony, the statement, that she personally appeared before such officer, is not to be regarded as conclusively true but can be proven by parol testimony to be false, and that the title of an innocent purchaser be rendered utterly worthless. No authority whatever is referred to by the Mississippi court to sustain this distinction. No case is cited, in which any such distinction was ever held by any court to exist; and, so far as I know, no decision in any other State can be found, which holds, that there is any such distinction.

In *Allen* v. *Lenoir*, 34 Miss. 321, it was held, that the certificate of the officer, that the wife personally appeared before him and acknowledged the deed, might be contradicted by parol evidence, and her deed be thus rendered invalid as against an innocent purchaser; but not even a pretence of any reason is given for such conclusion. It is simply assumed, that this is the law. The following is all, thus the court says on the subject :—"We can not escape the conclusion after an earnest effort to avoid it, that the mortgage was never acknowledged by Mrs. Lenoir, and the certificate, that she had acknowledged it, is untrue. A proper acknowledgment is an essential part of the execution of a conveyance of her land by a married woman. The bill charges the execution of the mortgage by Mr. and Mrs. Lenoir. In her answer she denies, she ever acknowledged it. There is nothing but the official certificate of her acknowledgment to

4

contradict her answer, and the answer is supported by a number of circumstances." Is such reasoning as this, if it can be called reasoning, to have any weight with us? Surely not. The question for decision was not, whether the acknowledgment was necessary to make her deed effectual, but simply this : What is the proper mode of proving or disproving, that such an acknowledgment had been made before a proper officer ? The court appears to have taken it for granted, that, because such acknowledgment was necessary, she could prove by parol evidence, that she had never made it before the proper officer, though such officer had officially certified in proper form, that she had appeared before him and acknowledged the deed. Now it does seem to me obvious, that no such inference can with any show of reason be drawn from the premises, if we bear in mind, that in every State except Missouri alone it had always been held, that the statements required to be made in such a certificate and essential to the validity of a married woman's deed as to her, if set forth in such certificate, could not be shown to be false by any parol testimony, such evidence being inadmissible to contradict any essential statement in such certificate.

The inference, I would draw, from what the Mississippi court said on the subject as above quoted is, that said court failed to look into the authorities and inadvertently assumed, that any statements essential to the validity of her deed set forth in such certificate might be contradicted by parol evidence. For if the court had intended to hold, that the character of the evidence necessary to prove or disprove the statement in the certificate, that the married woman had appeared personally before the proper officer, was different from the character of evidence necessary to prove or disprove any other statement in said certificate, it would certainly have said so and would have assigned some reason for so holding; for it seems clear, that every statement required by law to be made in such certificate must be proven by the same character of evidence; and certainly it is not self-evident, that the reverse of this is law. What surprises me is, that this court, even though it failed to examine the authorities, should have imagined,

that parol testimony was admissible to contradict the essential statements set out as required by law in such official certificate by a public officer.  Many of the reasons, which forbid this, are so obvious, that it is astonishing, that they did not occur to the court, even though it decided this point hastily and inconsiderately, as it is evident it did.

It surprises me, for instance, that the court should have failed to bear in mind certain elementary principles of law laid down in the text-books, which, if applied, would have led to directly the opposite conclusion to that assumed by the court.  For example the following principles are fundamental : (1.) Where the law appoints any one for a specific purpose, it must trust him, as far as he acts under its authority.  (2.) When a written instrument is constituted by law the authentic and sole medium of proving a fact, oral testimony can not be admitted to prove or disprove it.  (3.) When the law authorizes any person to make an inquiry of a judicial nature and to register the proceedings, the written instrument so constructed is the only legitimate medium to prove the result.  (Buller's N. P. 229 ; 3 Starkie on Evidence 1,043–4.)  An obvious application of these principles leads to the conclusion, that the certificate of a justice or other officer entrusted to examine a married woman touching the execution of a deed and to take her acknowledgment of it and to certify it for recordation, if it is made out in the form required by law, is conclusive of the facts stated in it essential to the validity of the deed ; and that such facts so officially certified can not be contradicted by oral testimony, which is necessarily a kind of testimony far weaker than such solemn certificate made out at the time, as such oral testimony must in most cases be based on the slippery memory of witnesses often interested of events, which took place many years before.

It seems to me, that many instances should have occurred to the court of certificates and returns of public officers in the execution of their duty being held conclusive of the statements therein made, as for instance, the return of an execution by a sheriff, which is conclusive between the litigating parties.  And such instances should have induced the court to hesitate before adopting as law a conclusion ap-

parently in conflict with the usual practice of courts. In a subsequent case however the court did undertake to assign reasons for its conclusions in *Allan* v. *Lenoir*. I refer to the case of *Johnston* v. *Wallace*, 53 Miss. 331. In that case the court attempts to draw a distinction between the case, in which the certificate states, that the married woman was personally before the justice and acknowledged the deed in proper form, while the parol evidence proves, that she was not before the justice, and a case, in which she was before the justice and did in some manner acknowledge the deed, while the parol evidence proves, that she did not acknowledge it in the manner prescribed by law, as, for instance, after an examination of her *privily* and apart from her husband. In the former case the court held parol evidence to be admissible but inadmissible in the latter case, the certificate of the justice being conclusive of all the essential statements therein made excepting only the statement, that the married woman personally appeared before the justice.

The court in *Johnston* v. *Wallace* showed, that the authorities, which it cited, fully established the proposition, that the official certificate of the acknowledgment of a deed is conclusive of every statement appearing on its face, and that these statements can not be contradicted by parol testimony; and the court gave very satisfactory reasons for the decision in that case. But its effort to show, that the decision in the latter case was not in conflict with the decision in *Allen* v. *Lenoir* was, it seems to me, exceedingly weak and unsatisfactory. President Johnson in his opinion has quoted a portion of the opinion on this point. I will here quote the residue :—"In *Allen* v. *Lenoir*, 53 Miss., 321, the certificate of the married woman's acknowledgment was a *forgery*. She had not seen the officer, who falsely certified her formal acknowledgment; and we held it competent for the married woman to show the utter falsity of the certificate. It was a *forgery* and a fraud, and the right of the party to be affected by it to show its true character could not be denied. The question before us now is not whether a certificate of acknowledgment can be shown to be a fraud and a *forgery*. We held it could be in *Allen* v. *Lenoir*, and we adhere to that view."

In President Johnson's opinion all the facts in Allen
v. Lenoir as developed by the parol testimony are fully
stated; and I have given all, that the court said upon
the subject under discussion, except what is quoted in Pres-
ident Johnson's opinion. If by the words—"It was a for-
gery and fraud, and the right of the party to be affected by
it to show its true character could not be denied"—the court
meant to intimate, that, because the officer had fraudulently
asserted in the certificate that, which was false, the married
woman could in every instance show the statement to be
not only false but also fraudulent and thus avoid her deed,
it is a position utterly unsustained by the authorities and
contrary to reason. In such a case it is well settled not
only in this State but in all the States except Missouri, that
as against a *bona fide* and innocent purchaser, who had no
notice of such fraud, she would not be permitted to prove
by parol testimony, that these statements so made in the
certificate were false and fraudulently made by the officer.
I need not refer to the many authorities, which fully sus-
tain this proposition. President Johnson in his opinion lays
down the same proposition and establishes beyond contro-
versy, that it is in accord with reason and all the authori-
ties.

But, as I suppose, the Mississippi court by the language
just above quoted meant only to say, that, if the certificate
of the acknowledgment of a deed by a husband and wife re-
corded with the deed was a forgery, that fact might be
proven by the married woman by parol testimony, and when
it was proven, the deed would thereby be avoided as to her.
There is no doubt of the truth of this proposition of law; for,
as is shown by President Johnson's opinion, the endorsement
on the deed of the certificate of the justice or other proper
officer of the acknowledgment of the married woman in a
prescribed form and the recordation of the deed and of the
certificate of acknowledgment as well as the execution of
the deed by the married woman are all expressly required
by the statute in order to make the deed effective to pass
her interest in the land conveyed thereby. (Warth's Code,
chap. 73, § 6, p. 559). Of course therefore, if the said certificate
of acknowledgment had not been endorsed on or appended

to the deed, as expressly required by the statute, but what purported to be such certificate was proven not to be the certificate of the justice but a forgery, the deed would be inoperative to convey the interest of the married woman in the land, just as the fact, that the deed itself was a forgery, would make the deed entirely inoperative; and as a matter of course such *forgery* in either case could be proven by parol testimony, the only evidence by which any forgery can be proven. As a matter of course no *forged* instrument, under which any party claims, however innocent the claimant may be, can ever confer any rights on any person. A forged bank-note or a forged negotiable note are no more utterly void, though in the hands of an innocent holder, than a forged deed or a forged certificate of the acknowledgment of a deed of a married woman. And, even if the certificate of acknowledgment of a married woman be not forged, yet if the deed itself be forged, it is utterly inoperative and void. These propositions seem to me so clear, as not to require the citation of any authorities to prove them.

But the last of these propositions, the only one, about which it would be possible to raise any question, was expressly decided in *Michener* v. *Cavender*, 38 Pa. St., 334. The syllabus, which states the facts of the case briefly but accurately, is as follows :—"When in a mortgage of married woman's separate estate the alderman falsely or by mistake certified to the separate examination and acknowledgment of the wife (who did not sign the mortgage nor appear before him) the mortgagee will be affected by the fraud, though he was not present at the acknowledgment nor informed of what passed. He will not be presumed a *bona fide* purchaser, nor is it necessary to prove notice to him of the fraud or mistake."—The opinion of the court was delivered by Woodward, Judge; and most of his opinion is quoted by President Johnson, and shows, that the court regarded the signature of Mrs. Michener to the mortgage as a forgery; for the court uses the following language;—"For aught, that appears of record, she never saw or heard of the mortgage, till she was sued upon it. Suppose the mortgage was a *forgery* out and out, and Cavender chose to invest his money in a purchase of it, must it be enforced, because he did not

know he was buying a forged instrument? An instrument known to be forged would not be purchased and would therefore be worthless to the forger. Counterfeit notes would never be issued, if a herald went before to proclaim their spuriousness. But, because they are taken without notice, do they become genuine? Is every bank and individual to redeem whatever obligations *bona fide* holders may obtain against them without regard to the question, whether the obligation was ever issued or not?" This shows, that the opinion of the court was based in that case largely upon the fact, that the deed was a forgery.

But, while we are considering this case, as it is obviously much relied on by President Johnson to sustain views, from which I dissent, I will quote a portion of the opinion not quoted by him, which clearly shows, that, though no direct notice was proven to be given to Cavender of the fraud on the wife, yet he had notice of facts, which in the opinion of the court ought to have put him on inquiry, and that for this reason also he could not be regarded as a *bona fide* purchaser ; and, if he was not, according to all the authorities the fraud upon the wife would vitiate the mortgage of her land when not in the hands of or claimed by a *bona fide* purchaser. Whether I would consider the facts known to Cavender sufficient to prove him to be a *mala fide* purchaser or not is immaterial, as it is obvious the court so regarded him, and for that reason, as well as because the deed was regarded as a forgery, the court held it to be inoperative and void. The part of the opinion, to which I refer, is as follows :—

"To carry the doctrine of notice to such extent would subvert all law and justice. A purchaser of real estate, who finds the deeds in the channel of the title all duly acknowledged, is certainly not required to go up the stream and inquire of every married woman, if she executed her deed voluntarily and acknowledged it according to law ; and if he pay his money on the faith of such title-deeds he is to be protected, and this probably is all that is meant by what judges have said about purchasing without notice. But a mortgagee is not a purchaser of an estate, though for the purposes of the recording acts he is sometimes treated as one. He acquires neither an equitable nor a legal estate in the premises mort-

gaged.  He is simply a lien-creditor and holder of a security
for money.  His assignee takes the mortgage subject to all
defences, unless he inquire of the mortgager and learn there
are none.  He is in no better condition than his assignor.  It is
not usual I know, for mortgagees to watch the execution and
acknowledgment of the instrument.  But when the estate is
that of a married woman and the mortgagee is himself a con-
veyancer, and holds, as from recitals of this mortgage we
perceive Mr. Cavender holds, other mortgages against the
same married woman, we are of opinion, that, before he ad-
vanced more money on the faith of her estate, it was his duty
to consult her.  The doctrine of notice, as deduced from the
adjudged cases, does not apply here.  It was never intended
for such a case as this.

This opinion was obviously based to some extent upon the
peculiar views held in Pennsylvania as to the legal and equit-
able rights and remedies.  But it may be perceived from
the above quotation, that the court would have held in the
case of absolute deed executed by a husband and wife con-
veying to an innocent purchaser, who paid his money for the
land, the real estate of the married woman, if there was ap-
pended to the deed a certificate of a proper officer of the ac-
knowledgment of such deed by the husband and wife in
proper form, duly recorded with the deed, that such *bona
fide* purchaser would get a perfect title to the wife's land so
conveyed, and that she would not be permitted to prove
by parol testimony, that the statement in the certificate,
that she appeared before the officer and properly ac-
knowledged the deed, was false, and that in point of fact she
never did appear before said officer, but that he had falsely
and fraudulently so certified, when the purchaser had no
knowledge of the fraud and knew nothing, which would in-
duce him to imagine, that any fraud of any sort had been
practiced on the wife.  The case of *The Central Bank of Fred-
erick and others* v. *Copeland and wife*, 18 Md., 305, appar-
ently is an authority for that portion of the opinion of the
Supreme Court of Pennsylvania above quoted, which draws
a distinction between an absolute deed and a mortgage, so
far as a wife is prohibited from proving, that the certificate
of the acknowledgment of the deed by her fraudulently certi-

fies to falsehoods, permitting it to be done, when the deed was a mortgage, though it was not proven, that the mortgagee had notice of fraud, but not permitting it to be done under like circumstances, when the grantor was a *bona fide* purchaser. I do not deem it necessary to consider, whether it be sound law or not, as it seems to me to be immaterial in the case before us, and I express no opinion as to whether this case lays down the law correctly in this matter or not.

After this digression I will now return to the consideration of the Mississippi case, which I was reviewing. From what was said by the court in *Johnson* v. *Wallace*, 53 Miss. 331, it seems to me apparent, that the distinction attempted to be drawn between permitting parol evidence to be introduced to contradict the essential facts set out in the official certificate of the acknowledgment of a deed by a married woman and the permitting her to contradict the fact set out in the certificate also, that she personally appeared before the officer and acknowledged the deed, is based on the notion, that if she did not so appear before the officer personally, the certificate must be a *forgery*, though it had been written out and signed by the officer. This seems to me a strange notion. In the case of *Allen* v. *Lenoir*, 53 Miss. 321, as in the case before us, if the parol testimony had been admissible to contradict an essential fact set out as required by law in the official certificate of the acknowledgment of the deed endorsed on it and recorded therewith, it would clearly appear, that the married woman did not in either case personally appear before the officer. But this certainly would not prove, that the official certificate signed by the officer with a perfect knowledge of its contents and never afterwards in anyway altered or changed was a *forgery*. If it was a forgery, I presume, the idea would be, that the officer was the *forger* and liable to be convicted and incarcerated in the penitentiary. If such certificate had the name of the proper officer signed to it by another without the knowledge or direction of the officer with the fraudulent purpose and design of injuring the married woman, or if such third person had altered the certificate, after it had been signed by the officer, with the fraudulent purpose of injuring the married woman, then it could truly be said, that the certificate of acknowledgment of the deed was forged.

But in the Mississippi case and the case before us the officers very foolishly, it is true, but not fraudulently in either case failed to require the married woman to personally appear before them and properly acknowledge the deed, because they regarded it as a mere form and wished to save her the trouble. In neither case had the officer the slightest idea, that the married woman, if she should be required to appear personally before him, would decline to acknowledge the deed, after all the requirements of the law had been complied with. And in each case the officer very foolishly and improperly certified, that she had appeared before him personally and acknowledged the deed in the manner required by the law. But this exceedingly improper act was in each case done without any fraudulent intent on the part of the officer; and it certainly did not in either case make the certificate a forgery and subject the officer to be convicted and sent to the penitentiary.

I do not suppose that President Johnson imagines, that the official certificate of the justice was a *forgery*, though it unquestionably, if the parol evidence is admissible, certified to falsehoods and among them to the untruth, that the married woman personally appeared before him, as she never did. But the fact, that she did not appear before him, President Johnson has concluded could be proven by parol testimony, though this proof would be a direct contradiction of an essential fact stated in the official certificate of the justice and expressly required by the law to be set out in such official certificate of her acknowledgment.

From this conclusion and all his reasoning whereby such a conclusion was reached I must dissent. In the language of Judge Tucker speaking as I understand, on this point in *Harkins* v. *Forsyth et al.*, 11 Leigh 305 : "To me, indeed, it seems, that the demon of mischief could not suggest a notion better calculated to throw all things in relation to titles in their original chaos, than the establishment of the principles here contended for." This was said with reference to the allowance of parol proof to contradict essential facts stated in a justice's official certificate of the acknowledgment of a married woman of her deed, and it applies just as forcibly to the denial in this manner of the fact, that the

married woman personally appeared before the. justice and acknowledged the deed, as to any other fact stated in his official certificate. For the effect of such denial of these facts by parol evidence, if permitted, would in each case render null the title of an innocent purchaser, who after using all possible care in the examination of the records had paid his money for land, to which he had got, so far as it was possible for him to ascertain, a perfect title. But this apparently perfect title, if these principles contended for by President Johnson are established, can be destroyed by the testimony of a widow as to what occurred, when the deed was executed, perhaps a quarter of a century before; the frail memory of a witness being substituted as proof for the solemn certificate of the facts made by a sworn officer at the time of their occurrence. Such can not, I think, be law. Both reason and the authorities established, as, I think, I have already shown, that in a contest with an innocent purchaser a married woman will not be allowed to introduce any parol testimony to contradict any fact appearing on the face of the official certificate of the acknowledgment of a deed, which is in proper form and has been duly recorded together with the deed of herself and husband.

President Johnson in his opinion says, "I have found no case, where it has been held, that, if it clearly appears by proper parol evidence, that the married woman never in fact appeared before the officer to acknowledge the deed, and the certificate contains all the requirements of the law, the deed would operate to devest her estate even in favor of an innocent purchaser; but we have cited two cases, where it has been held otherwise." He should rather have said: The law everywhere requires, that the certificate of an officer of the acknowledgment of a deed by a married woman should be appended to the deed and recorded with it, and that certain facts are always required to appear on the face of such a certificate, and always among them is the fact, that the married woman personally appeared before the officer and acknowledged the deed in a prescribed form, and cases are to be found everywhere except in the State of Missouri, which hold, that, when this certificate is in the prescribed form, the statement of any fact in it is re-

garded as conclusively true in a controversy with an inno-
cent purchaser, and the married woman in such a case will
not be permitted to introduce any parol evidence to contra-
dict any fact stated in such a certificate, and therefore she
can of course introduce in such a case no parol evidence to
prove, that she never did appear before the officer and ac-
knowledge the deed; the fact, that she did so appear being
always stated on the face of such a certificate; and I have
found but a single case out of Missouri, where a married
woman has ever as against an innocent purchaser been per-
mitted by parol evidence to contradict the facts stated in
such certificate, that she personally appeared before the offi-
cer, or any other fact stated in such a certificate, and that
is *Allen* v. *Lenoir*, 53 Miss. 321.

We have seen that that case proceeds on the absurd notion,
that, if the certificate of the officer asserts the fact, that the
married woman personally appeared before the officer and
acknowledged the deed, this falsehood in some unexplained
manner renders the certificate a *forgery*, and therefore it is the
same as though there had been no certificate of acknowl-
edgment of the married woman appended to the deed, though
it is admitted, that the certifying of no other fact in the deed
falsely could make the certificate a forgery or have any such
effect.   The other case referred to by President Johnson as
sustaining his position is *Michener and wife* v. *Cavender*, 38
Pa. St., 334.   That case so far from sustaining the position of
President Johnson is really in opposition to it, as we have
shown.

The decisions supporting the principles above laid down
by me and in effect overthrowing the principles laid down
by President Johnson are very numerous, and many of them
are cited by him in his opinion.   It will suffice here to refer
to one or two decisions by our Court and by the Court of
Appeals of Virginia prior to the formation of this State.   In
the case of *Rollins* v. *Menager*, 22 W. Va., 462, the 2d point
in the syllabus is:   "A *feme covert* will not be permitted by
parol evidence to contradict the facts set out in the certifi-
cate of her privy examination, acknowledgment and decla-
tion so as to avoid the effect of her deed of trust, unless she
first establish by parol evidence satisfactorily, that with the

concurrence of those claiming under the deed of trust the married woman has been defrauded or imposed upon by the pretended privy examination, acknowledgment and declararation." Now this case according to the syllabus which was concurred in by the whole Court, including President Johnson, certainly decided that a *feme covert* would not be permitted to contradict by parol evidence any of the facts set out in the certificate of her privy examination in a controversy with an innocent purchaser. And as the fact, that she appeared before the justice personally, was and always is one of the facts set out in such certificate when in the form required by our statute, of course she could not in such a controversy be permitted to contradict this fact. This then is one of the numerous cases which sustain my position and are opposed to the views of President Johnson on this point. In *Harkins* v. *Forsyth and others*, 11 Leigh 294, the syllabus states, that it was held, that "as the privy examination, acknowledgment and declaration of the wife are certified by the justice pursuant to the direction of the statute, the deed is effectual to pass all her right to the land and interest"— that is, that deed is valid, if the certificate of acknowledgment by the wife is in the form prescribed by the statute, whether all or any of the facts in it are true or false, the certificate being conclusive of the truth of all the facts stated in it, when it pursues the form prescribed by the statute, and of course no parol evidence is admissible to contradict any part stated in such certificate and thus invalidate the deed. And one of the facts required to be stated in such certificate being, that the married woman personally appeared before the justice, of course it can not be contradicted by parol evidence, except when such fact was fraudulently stated to exist, when it did not, the purchaser being cognizant of such fraud and concurring in it, and thus not being a *bona fide* purchaser. This is a leading case and it has always been followed in Virginia and West Virginia. The opinion in the case shows, that such certificate being in the nature of a judicial act is to be regarded in all respects as conclusively true ; and therefore, when it follows the prescribed form, no fact stated in it can be contracdicted by parol evidence. The whole reasoning in this decision shows, it seems to me, beyond contro-

versy, that the fact, that the married woman personally appeared before the proper officer or officers, which the statute expressly requires to be stated in the certificate, when stated in it, must like every other fact stated in it, as required by the statute, be regarded conclusively as true, and no evidence be admissible to contradict it.

Very many cases in the different States of the Union other than Missouri of a like character and based on the same reasoning might be cited, and I therefore regard the case of *Allen* v. *Lenoir*, 53 Miss., as explained in *Johnston* v. *Wallace*, 53 Miss., as in substantial conflict with all the authorities on the subject in the United States with the single exception of those in Missouri, and they do not concur with the Mississippi cases; for they make no such distinction, as was made in those Mississippi cases, as to the conclusiveness of such certificates, between the fact that the wife appeared before the proper officer and any other facts stated in such certificate, but hold all the facts stated in such certificate as but *prima facie* true. This position, though everywhere condemned as mischievous in the extreme, is, it seems to me, much more reasonable than the singular position taken in these Mississippi cases. They are sustained by no authorities outside of Mississippi. Yet President Johnson in his opinion has adopted this eccentric view.

A review of the origin of the various statutes to be found in every State of this Union, whereby married women uniting with their husbands in deeds are permitted to convey all their interest in real estate, as though they were *femes sole*, will demonstrate beyond controversy, I think, the falsity of President Johnson's views, from which I dissent. The history of our legislation on this subject is briefly stated by Judge Snyder in delivering the opinion of our Court in *Henderson* v. *Smith*, 26 W. Va. 833. He says : "By the common law a married woman could not by joining her husband in a deed devest herself or those claiming under her of her own estate. In process of time however fines and recoveries were introduced for this purpose, and by them the rights of the wife might be successfully transferred. But to prevent imposition upon her, it was subsequently provided by statute, that when a *feme covert* was one of the parties to a fine she

should be privily examined, and if she refused her assent, the fine could not be levied; that while the privy examination was positively enjoined by the statute, yet if the wife was allowed to acknowledge the fine without such examination, she was nevertheless bound by it, for it was held to be a judicial proceeding, the record of which could not be contradicted except for a fraud in the connsee, whom equity in such case considered a trustee for her. Such was the law in England, when this country was first settled, and for a long time thereafter. Early in the history of Virginia a deed accompanied by a *privy* examination of the wife was made a substitute for the fine and was given by statute the same effect. At first this *privy* examination could only be taken before a court of record or two justices of the peace. In both the cases the same requisitions were necessary. In both it was required, that the deed should be shewn to the wife and explained to her, that she should acknowledge it as her act and deed and declare that she had willingly signed, sealed and delivered it. Thus the law remained in Virginia until the revision, which resulted in the code of 1849. By that code it was for the first time provided in that State, that a notary public might take the *privy* examination of a married woman. The same statute provided the form, in which such examination should be made and certified. (Code of Va., secs. 3 and 4, ch. 121.) This form is substantially the same as the one previously required in that State and is identical with the one adopted and in force in this State. (Secs. 3 and 4, ch. 73 of Code)." On this Judge Snyder comments as follows: "In *Harkins* v. *Forsyth*, 11 Leigh 294, 302, decided in 1840, the court in its opinion says "when the examination is made in court it must be conceded, that it is altogether conclusive, and no allegation can be admitted to contradict the entry upon the record, however much it may be at variance with the real facts. Though the judge or justice, who may have examined her (the married woman) may have disregarded every requisite of the statute, yet when the term is once ended, the truth of the record never can be questioned, but the examination must be taken to have been what by the record it appears to have been'."

Judge Snyder in this opinion then proceeds to show, to use his language, " that an acknowledgment and *privy* examination taken *in pais* by two justices is of the same nature and must be given the same effect, as if it had been taken before a court and entered upon its records. Such being the case, it seems to me to follow as an unavoidable consequence, that by authorizing notaries public to take such acknowledgments the legislature must have intended to confer upon them duties of the same nature then and theretofore exercised by courts and justices and to give their acts like dignity and conclusive effect. The reason as well as nature and history of the subject, show the official act of taking the *privy* examination of a married woman whether done by a court, justice or notary is a judicial, or, as it is sometimes called, a *quasi* judicial act. I have examined quite a number of authorities on the subject, and all of them without exception hold or treat such act as judicial in its nature. The following are some of the cases referred to. *Harkins* v. *Forsyth, supra; Jemison* v. *Jemison*, 3 Wheat. 457; *Wasson* v. *O'Conner*, 54 Miss. 352; *Neal* v. *Taylor*, 9 Bush 380; *Wilson* v. *Truer*, 20 Iowa 283; *Hunter* v. *Glassgow*, 74 Pa. St. 79; *Stewart* v. *Hampton*, 40 Mo. 409." Judge Snyder in his opinion subsequently refers to several other cases which support these views, and among them *Wall* v. *Paterson*, 1 P. F. Smith 289; *Tavener* v. *Barrett*, 21 W. Va. 688; *Kerr* v. *Russell*, 69 Ill. 666; and *Ennor* v. *Thompson*, 46 Ill. 221. His conclusion, to use the language of the first point in the syllabus of the case 26 W. Va. 289, is: "The official act of taking and certifying the acknowledgment and privy examination of a married woman to a deed, whether done by a court, justice or notary, is in the nature of a judicial act; and therefore the officer is not liable in damages for such act, however imperfectly he may perform it, unless he acted from malicious, impure or corrupt motives."

In these views our entire Court, including President Johnson, concurred. From this case, *Tavener* v. *Barrett*, 21 W. Va. and *Harkins* v. *Forsyth*, 11 Leigh 294, it appears, that the certificate of a justice of the peace of the appearance and privy examination of a married woman, if in due form and properly recorded with the deed, is a mere substitute for the

entry on the record-book of the court of record formerly of the appearance before the court of a married woman and her acknowledgment of a fine ; and that such a certificate of the acknowledgment of a deed is regarded as a judicial act and has precisely the same effect as such entry by a recorder of her acknowledgment of a fine and is just as conclusive of the facts stated in it as the entry on the record-book of the court of record of like facts stated in such entry. If therefore the appearance of the married woman personally before the court and her acknowledgment of the fine entered on the record-book can neither of them be contradicted by parol evidence, neither can the appearance of the married woman personally before the justice and her acknowledgment of the deed in proper form, if certified in such official certificate of a justice, be either of them controverted by the married woman.

It only remains then to inquire, whether, if the entry on the record-book of a court of record of general jurisdiction, and which court only could enter a fine, was, that the married woman personally appeared before the court and acknowledged a fine in the appropriate manner, she could by parol evidence contradict this statement on the record-book. I think it well settled, that she could no more contradict the statement on the record, that she personally appeared before the court, than she could contradict the further statement on the same book of such court, that she acknowledged the fine in the proper manner. Both of these facts are equally conclusive on her when stated on the record of such court. To prove this I need only refer to the decision of our own Court. Minor in his Institutes, vol. 2, p. 150, says: "A fine is a conclusive suit commenced by an intended grantee against the grantor and by leave of the court *compromised*, the land in question being by the compromise acknowledged to be the *right of the grantee.* When a married woman is a party to it, she is examined by the court apart from her husband, to ascertain whether she joined in the fine of her own free will, or was compelled to it by the menaces, or undue influence of her husband (2 Bl. Com., 348 *et seq.;* Wm. on Real Property, 46-7, 212)." None but a court of general jurisdiction, a superior court, ever had jurisdiction in real actions, which

were always regarded as higher and more important actions than personal actions. A fine then was nothing but the acknowledgment or confession by the defendant of the plaintiff's action before a court of general jurisdiction. And the record entry of such acknowledgment or confession in such a court would of course be at least as conclusive as a like entry of acknowledgment or confession by the defendant of the plaintiff's action before a court of general jurisdiction. And we have decided, that the entry of such acknowledgment or confession of the plaintiff's action, before a court of general jurisdiction in a personal action, even when the entry stated, that such confession was made by the defendant's attorney, was absolutely conclusive on the defendant and could not be contradicted by parol evidence. Of course such a judgment, like any other judgment obtained by the fraud of the plaintiff, could be declared void by a court of equity. But except when the plaintiff obtained his judgment by fraud, it could when rendered by a court of general jurisdiction, never be contradicted by parol evidence, whether obtained without the defendants being served with process or whether it appeared on the record-book of such a court, that it was a judgment confessed by the defendant or by his attorney. Parol evidence in such case to prove, that the defendant was never served with any process, never heard of the case and never employed the counsel who for him, as shown by the record-book, appeared and confessed judgment, was inadmissible. These propositions were all expressly decided by this Court recently ( *Wandling* v. *Straw and Morton*, 25 W. Va., p. 692, points 1, 2, 3 of syllabus). This was a unanimous judgment all of the members of our Court including President Johnson concurring in it after a careful consideration of the subject. In truth the reasoning underlying our decision in *Mollahon* v. *Newman*, 10 W. Va., 488, really was an affirmation of these principles.

It is true, quite a number of decisions have been rendered, in which these principles have been denied; but in this case of *Wandling* v. *Straw and Morton* we repudiated all such decisions, and our conclusions are supported both by the weight of reason and authority, as may be seen by examining the numerous authorities cited in Smith's Lead. Cas., in

notes reviewing the case of *Creppi* v. *Darden*, vol. 1, p. 842, where he says: "It would seem to be clearly and conclusively established by a weight of authority too great for opposition, unless on the ground of local and peculiar law, that the fact of jurisdiction appearing on the face of the record of a court of general jurisdiction, cannot be controverted. Any other matter determined by the court might as well be disputed as this. Freeman in his work on Judgments, chapter 8, also after reviewing many authorities concurs in the conclusion, which our Court reached in *Wandling* v. *Straw*, 26 W. Va. 692, as in accord with the proposition stated above by Smith in his Leading Cases; he refers to *Granger* v. *Clark*, 22 Maine 128; *Cook* v. *Darling*, 18 Pick 393; *Brown* v. *Turner*, 12 Ala. 752; *Lightsey* v. *Harris*, 20 Ala. 411; *Bart* v. *Campbell*, 4 W. & S. 191, and many other authorities might, if necessary, be cited to the same effect. In fact there will be found a very large number of cases both in Smith's Leading Cases in this note and in Freeman on Judgments, ch. 8, which support all the propositions laid down by our Court in the case in 25 W. Va. It is true, there are quite a number of courts, who depart from these propositions and do not hold the entries on the record of a court of general jurisdiction as conclusive of all the facts stated therein, as we do and as is held by the courts generally. Among these cases, of which we must disapprove as not admitting the conclusiveness of the entry on the record of such a court to the extent which they ought, are a number of Mississippi cases cited in Smith's note before referred to and by him disapproved of (*Gwinn* v. *McCarrol*, 1 S. & M. 368; *Edwards* v. *Tavener*, 14 S. & M. 75; *Smith* v. *State*, 13 S. & M. 140; *Saffarant* v. *Terry*, 12 S. & M. 690). Other cases of a like character in other States are cited by Freeman on Judgments, ch. 8, and disapproved of by him; commenting on such cases cited, in sec. 133, ch. 8 he says:

"Many courts however have been deeply impressed by the apparent violation of natural justice involved in concluding a party who had no opportunity of presenting his defense—no notice that his rights and interest were in jeopardy. Yielding through a tenderness for the special and unavoidable injustice occasionally done to litigants they have in numer-

ous cases overlooked the interest of the community to secure the safety of the individual. To the end, that each citizen may feel assured, that no injury can be done him in the courts without his notice actual or constructive, they have impaired the public confidence in judicial authority ; they have made the title to a large class of property precarious and unstable by taking away the uncontrollable verity of the record, substituting for it the interminable uncertainties of parol evidence ; and instead of allowing parties who have acquired title at judicial sales to rest secure in the presumption, that courts of record always 'act right,' these parties have been required, often without notice of the intended attack to defend proceedings occurring many years previous and apparently free from vice or infirmity."

Into just such a mischievous error and for just such reasons, it seems to me, President Johnson has fallen in the views, which he has expressed, from which I am dissenting, forgetful, it seems to me, that these errors have been repudiated by our Court in *Wandling* v. *Straw*, 25 W. Va. 692. For, from what I have said, it seems obvious, that it would be just as contrary to principle and just as mischievous to permit a married woman to contradict by parol evidence the fact, that she appeared before a justice, when his certificate says she did, and acknowledged a deed, after such certificate is admitted to record with the deed, as it would be to permit a person to deny that he appeared in court in person or by counsel and acknowledged a judgment, when the entry on the record shows he did. In neither case ought such a mischievous course to be allowed, except when the grantor has defrauded the married woman in getting such a certificate, or when the plaintiff has defrauded the defendant in getting such an entry of a judgment as confessed. To show the estimate, which Freeman put on the law with reference to the conclusiveness of judgment of courts of general jurisdiction, as laid down in Mississippi, I will quote one section from his work on judgments. In sec. 124, he says : " It was reserved to the court deciding the case of *Steen* v. *Steen*, 25 Miss. 513, to exhibit extraordinary misconception of the law by the use of the following language : ' It is also a fixed rule on this subject, that the record of a judgment must show upon

its face, that the court did have jurisdiction of the person, unless it so appears, the judgment is a nullity, for it will not be presumed, the court had jurisdiction, unless the record shows the fact.'"

The only wonder is, that with the peculiar views of the law with reference to the verity of the records of courts of general jurisdiction held by the courts of Mississippi as shown by the case I have cited, they had not gone further, than they did, and held, that in all cases any of the facts stated in the certificate of a proper officer of the acknowledgment of a deed were but *prima facie* correct and might be contradicted by parol testimony. Similar views as to the verity of a record of a court of general jurisdiction, it would seem, are held in Missouri (*Howard* v. *Thornton*, 50 Mo. 291); and holding such views, they seem to have followed them to their natural conclusion, that the certificate of an acknowledgment by a married woman of a deed made by a proper officer is never conclusive of any of the facts stated in it, but is only *prima facie* true and may be contradicted by parol evidence. In repudiating the views of both the Mississippi courts, and the Missouri courts of the verity of the records of courts, we have in effect repudiated their views of the verity of the certificate of a justice of a married woman's acknowledgment of a deed; for such certificate is a judicial act, a mere substitute for an entry of a fine on the records of a court of general jurisdiction, and, as we hold in this State, entitled to the same conclusive effect.

There is certainly less hardship in holding, that a married woman can not by parol testimony deny, that she appeared before a justice as stated in his certificate of her acknowledgment of a deed, than to hold, as we did in *Wandling* v. *Straw* that a defendant can not by parol testimony deny, that he ever employed the counsel, who, the entry on the record states, appeared and confessed judgment in favor of the plaintiff. In the one case the defendant may have been treated unjustly without any fault or negligence on his part, he having done perhaps nothing and having no reason to suppose, that his rights were in any jeopardy, never perhaps having been notified, that any suit had been brought against him. If he under such circumstances must be bound by the

entry on the record, that the general public may be able to put confidence in such entries, why should not a married woman in like manner be bound by the entry on the record-book of the titles to land, that she had appeared before a justice as stated in his official certificate of her acknowledgment.' She, if diligent, has a far better opportunity of protecting herself against loss from such certificate, if false, than has the defendant, who has never heard he has been sued, has of defending himself against loss from an entry being falsely made, that he had appeared by an attorney and confessed judgment for a large amount. The married woman to make her deed valid must at least have signed, and, when she does so, she knows, or is presumed to know, that her signature has been procured for the purpose of having the deed recorded along with her certificate of acknowledgment, as otherwise her deed would be void; and knowing this, if she is not called upon to appear before a justice or officer to acknowledge the deed, she would have just ground to suspect, that there was something wrong, and any loss from a justice falsely certifying, that she appeared before him, and he took her acknowledgment, could generally be prevented by calling at the clerk's office and warning the clerk to notify her promptly, if such deed should be brought to him to record. But the defendant, who has never been notified, that he is sued, can not in any way, I can think of, protect himself against loss, if an entry is made, that he had appeared by attorney and confessed judgment. If such a judgment must be valid, when the plaintiff is innocent of any fraud, as we have decided it must be, in order that the general public may be protected, why should not such a deed actually executed by a married woman, though never acknowledged, be held valid, when the record shows, that she did appear and acknowledge the deed properly before a justice? The public interest requires, that it should bind her, even more strongly than it requires, that a defendant should be bound by a judgment, he really never did confess or have any reason to believe was claimed against him. We cannot afford to protect the rights of married women against all possible invasion, if in so doing we are compelled to adopt means, which must certainly sacrifice the interest of the entire community

by rendering all land titles uncertain and by doing gross in-
justice to many *bona fide* purchasers of land, who have,
after the exercise of great caution paid the purchase-
money and occupied and improved their lands for
many years without the least suspicion, that their titles
were not as valid, as they appeared by the public
records to be. It seems to me quixotic to attempt to pre-
vent an almost imaginary wrong to some married woman
by establishing as law that, which must necessarily inflict on
the entire community great loss, and on many *bona fide* pur-
chasers of land real wrong, which by no diligence on their
part can they escape, if they purchase land at all. And
these are the mischiefs, which must result, if the views of
President Johnson, from which I dissent, are adopted. I re-
gard his view, that the justice, who as a sworn officer has
solemnly certified, that the married woman had appeared
before him and acknowledged the deed as required by law,
should be allowed to testify, that such official certificate was
utterly false, and then to destroy the validity of the deed
and impose on an innocent purchaser, who may have bought
the land trusting in the fairness and truth of his certificate,
as a position unsupported by reason or by authorty.
Even if his certificate could be held as not conclusively true,
he certainly ought not to be allowed to .deny its truth.
This principle is sustained by the overwhelming weight of
authority; but I deem it unnecessary to discuss this point.
In none of the authorities referred to by President Johnson
on this point do we find a single expression of an opinion, that
a justice should be thus permitted to deny the truth of his
official certificate. All that can be shown by any of them,
is, that a judge has sometimes commented on the evidence of
a justice, when holding that his certificate could not be con-
tradicted by parol testimony, without saying further, that, if
it could be, he on general principles could not be permitted
to contradict his own official certificate, it being contrary to
public policy to permit a sworn public officer to be examined
to prove, that he had violated the oath he had taken to
perform faithfully his duties. The contrary has been often
expressly decided. In examining the cases, which President
Johnson cites, I found, that in several of them it was said, that

a public officer can never be permitted to deny the truth of his own official acts; and this principle was declared applicable to a public officer taking the acknowledgment of a married woman of a deed and certifying it, but I kept no memorandum of the expression of such opinion by judges in such cases; and the cases referred to are not now accessible to me. I deem it unnecessary on this point according to my view in this case to do more than express my dissent from the views of President Johnson on this point also.

REVERSED.  REMANDED.